H.S. Gere & Sons, Inc. *vs.* Jonathan Frey & others.[1]

Hampshire. January 7, 1987. — June 25, 1987.

Present: Hennessey, C.J., Wilkins, Abrams, & Nolan, JJ.

*Public Record. Privacy. Practice, Civil*, Impoundment order.

In proceedings brought by a newspaper publisher challenging an order impounding court files of a certain civil action which arose from nonforcible rape of a child and which had been settled before trial, no error appeared in the judge's refusal to lift the impoundment order where he properly concluded that the government's interest in the protection of privacy in this case outweighed the principle favoring publicity of judicial proceedings and that therefore good cause for the impoundment continued to exist. [328-332]

Statement concerning the Uniform Rules on Impoundment Procedure (1986) as applicable to orders of impoundment entered on and after September 1, 1986. [332-333]

Civil action commenced in the Superior Court Department on December 14, 1984.

The case was heard by *George C. Keady, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Benjamin A. Barnes* for the plaintiff.

*Frederick U. Fierst* for Jonathan Frey.

*Richard M. Howland*, for Theresa A. Turcotte, submitted a brief.

*Francis X. Bellotti*, Attorney General, & *Judith S. Yogman*, Assistant Attorney General, for the clerk of the Superior Court in Hampshire County, submitted a brief.

Abrams, J. The plaintiff, H.S. Gere & Sons, Inc., publisher of the Daily Hampshire Gazette (Gazette), brought this action

---

[1] Theresa A. Turcotte and the clerk of the Superior Court in Hampshire County.

seeking relief from an impoundment order that had been entered in a civil action between Theresa A. Turcotte and Jonathan Frey. See *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1977). On cross motions for summary judgment, the judge granted Frey's motion for summary judgment and dismissed the complaint as to all the defendants. Therefore, the order of impoundment remained in effect. The plaintiff appeals. We affirm.

In January, 1981, Theresa Turcotte brought a civil action against Jonathan Frey. Shortly after the complaint was filed, the plaintiff filed a motion to impound the civil case pending a hearing on the merits.[2] This motion was allowed and the entire file was impounded.

Two months after the civil action was commenced, criminal charges were brought against Frey. Frey was found guilty on three indictments charging nonforcible rape of a child, G. L. c. 265, § 23 (1984 ed.), on indictments charging assault and battery, G. L. c. 265, § 13A (1984 ed.), and procuring alcoholic beverages for a minor, G. L. c. 138, § 34 (1984 ed.).[3] The proceedings in this trial were open to the public and the Gazette printed several articles concerning the trial.

Discovery in the civil matter continued until 1984, when it appeared that the matter would go to trial. In October of 1984, the parties entered into a settlement agreement, which was filed with the court. In the settlement agreement, the parties agreed that the case file would remain impounded and that the terms of the settlement not be made public. This privacy aspect of the settlement agreement was brought to the attention of the presiding judge at the court where the agreement was filed, and he ruled that only the judgment itself was to be impounded. The judge did not know of the 1981 impoundment order. Un-

---

[2] The record does not reflect that a hearing was held.

[3] On appeal, this court affirmed Frey's convictions. *Commonwealth* v. *Frey*, 390 Mass. 245 (1983). Frey was sentenced to two years in a house of correction on the indictments charging statutory rape. After serving eleven months, Frey was released on parole.

beknownst to him, his order had the effect of lifting the prior impoundment order.[4]

In December, 1984, a reporter for the Gazette learned that the civil action had been settled. The reporter requested the papers, and because the impoundment order had been modified so that only the settlement agreement was impounded, he was shown the case file. Subsequently, the reporter telephoned Frey's attorney and requested some information concerning the case. When the reporter informed the attorney that the matter was no longer impounded, the attorney went to court and requested that the judge who had modified the impoundment order reinstate the 1981 order, impounding the entire case file. The judge granted this request and temporarily impounded the entire file, pending a hearing on the matter. After hearing, the judge concluded that the 1981 impoundment order was "lifted by error."[5] He ordered that the matter be permanently impounded.

As a result of this order, the publishers of the Gazette brought this action pursuant to the procedure outlined in *Ottaway Newspapers, Inc., supra,* seeking that the order of impoundment be lifted. The judge determined that the government interest in the protection of privacy outweighed the principle of publicity in this case, and that good cause for the impoundment existed. Therefore, he ordered entry of summary judgment for the defendants.

On appeal, the Gazette contends that the settlement in this case is unusual and newsworthy in light of the prior publicity given to the victim, her family, and the criminal trial. The Gazette also argues that the public should be informed that a person involved in a crime can face civil liability along with criminal penalties. Finally, the Gazette notes that the public has great interest in the disposition of rape and child sexual

---

[4] There was no hearing and no notice to the parties that the order, in effect, lifted the 1981 impoundment order.

[5] The judge noted that, because "these parties have come to some agreement in private, and having consideration of that agreement — that the papers remained impounded, and they ought to be able to keep them [impounded]."

abuse cases. Therefore, the Gazette argues that the order of impoundment is contrary to the "general principle of publicity" and consequently the judge's order is error. See *Commonwealth v. Blondin*, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950). We do not agree.

"It is within the discretion of a court to impound its files in a case and to deny public inspection of them, and that is often done when justice so requires" (citations omitted). *Sanford v. Boston Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945). See *New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404, 410 (1979); *Ottaway Newspapers, Inc., supra* at 546; Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974). In exercising this discretion, a judge must balance the privacy issues against the "general principle of publicity" which governs judicial proceedings in this Commonwealth. *Blondin, supra. New Bedford Standard-Times Publishing Co., supra.* Through the balancing process, a judge must determine whether "good cause" to order impoundment exists and must tailor the scope of the impoundment order so that it does not exceed the need for the impoundment. See *Ottaway Newspapers, Inc., supra* at 550 n.17. See also *George W. Prescott Publishing Co. v. Register of Probate for Norfolk County*, 395 Mass. 274, 279 (1985).

In the proceeding to challenge the impoundment order, the judge here noted that a court may impound a case, without express statutory authority,[6] on a showing of "good cause." The judge did not rely on the fact that the parties had agreed that the case would remain impounded.[7] Instead, he balanced

[6] Numerous statutes limit access to court proceedings and records. See, e.g., G. L. c. 94C, § 34 (1984 ed.) (sealing of records of first offenders under Controlled Substances Act); G. L. c. 119, § 60A (1984 ed. & 1985 Supp.) (records of court in delinquency cases to be withheld from public inspection); G. L. c. 210, § 5C (1984 ed.) (petitions for adoption and related pleadings not available for public inspection); G. L. c. 276, §§ 100A, 100B, 100C (1984 ed.) (sealing of certain criminal record files by Commissioner of Probation).

[7] As we note *infra* at 332, Uniform Rules of Impoundment Procedure (1986) have been promulgated and became effective on September 1, 1986. Rule 7 of the Uniform Rules of Impoundment Procedure (1986) states that "[a]greement of all parties or interested third persons in favor of impoundment shall not, in itself, be sufficient to constitute good cause."

the privacy interests involved against the principle of publicity to determine whether good cause for impoundment existed. The judge noted that the materials at issue consisted primarily of discovery information, which is not a traditionally public source of information. See *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 33 (1984); *Anderson* v. *Cryovac, Inc.*, 805 F.2d 1, 6 (1st Cir. 1986). The judge also noted that the parties are not public officials. Moreover, because a legitimate expectation of privacy ordinarily is sufficient to constitute good cause,[8] and the nature of the information was "intensely personal," the judge concluded that the government interest in the protection of privacy outweighed the principle of publicity.

The material to which the Gazette seeks access in this case includes discovery information such as interrogatory answers and deposition transcripts of the plaintiff and the defendant, as well as third parties who are not public figures. The Gazette also seeks access to the settlement agreement.[9] Although the case was ordered impounded in 1981, opposition to this order was not expressed until 1984.[10]

In *Seattle Times Co., supra* at 33, the Supreme Court stated that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."[11] As the Supreme Court noted, the rules of

[8] In the *Prescott* case, *supra* at 278, the court stated that "legitimate expectations of privacy, possessed by most litigants in domestic relations proceedings, would ordinarily constitute 'good cause' to justify impoundment of discovery materials which are confidential in nature." But, because the *Prescott* case concerned a public official, the court applied a different standard, one of overriding necessity, to determine whether impoundment was appropriate. *Id.* at 279.

[9] We note that we have reviewed the impounded case file. The impounded depositions were not sent to the court along with the case file, therefore we have not reviewed the depositions.

[10] The defendant Frey argues that the Gazette's action should be barred by laches. The defendant asserts that the Gazette knew as early as 1982 that the civil action between Turcotte and Frey had been impounded. The record does not reveal precisely when the Gazette learned of the impoundment, although it is clear that the Gazette had notice of the impoundment for at least a few months prior to initiating any challenge to the order.

[11] As early as 1884, Justice Holmes noted that "[i]t is desirable that the trial of causes should take place under the public eye, not because the

civil procedure provide liberal discovery which aids parties in trial preparation and the settlement of cases. See *Seattle Times Co., supra* at 34. Cf. *United States* v. *Anderson,* 799 F.2d 1438, 1441 (11th Cir. 1986), cert. denied sub nom. *Tribune Co.* v. *United States,* 480 U.S. 931 (1987). Yet these rules which permit broad discovery do not differentiate between information that is private and that which does not implicate privacy concerns.[12] For these reasons, the Supreme Court concluded that "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context."[13] *Seattle Times Co., supra* at 34.

Most information in the case file which the Gazette seeks is not generally public information. Moreover, because of the personal and sensitive nature of the information and the prior impoundment order, the parties and the deposed witnesses had a legitimate expectation that the file would remain private. Although the criminal trial was given extensive coverage by the Gazette, the parties and the witnesses are not public figures, as in *Prescott*; therefore, the heightened standard of "overriding

---

controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley* v. *Pulsifer,* 137 Mass. 392, 394 (1884). Nevertheless, he commented that publication of preliminary papers throws no light on the administration of justice as both the form and content of such a document depend solely on what a private party chooses to include. *Id.*

[12] Moreover, often some of this information is hearsay which would not be admissible at trial.

[13] Unlike the case at bar, *Seattle Times Co., supra* at 22, involved the ability of a *party* to a civil action to disseminate, in advance of trial, information gained during the discovery process. In *Anderson* v. *Cryovac, Inc.,* 805 F.2d 1, 6 (1st Cir. 1986), the court applied the reasoning of *Seattle Times Co.* to an action initiated by the Globe Newspaper Company to intervene in a lawsuit alleging contamination of the town of Woburn's water supply. The United States Court of Appeals for the First Circuit held "that there is no right of public access to documents considered in civil discovery motions." *Id.* at 11-12.

necessity"[14] is inapplicable here. *George W. Prescott Publishing Co., supra* at 279. Moreover, the depositions involve various third parties, not involved in the criminal matter, who may have expected that the depositions would not be made public. Finally, as we noted in *New Bedford Standard-Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol,* 377 Mass. 404, 414 (1979), "[t]he public interest in overseeing the integrity of the judicial process is clear while court proceedings are pending . . . but the utility of the glare of publicity fades after the termination of the proceedings." There was no error.

On September 1, 1986, rules concerning impoundment procedure became effective. See Uniform Rules on Impoundment Procedure (1986). These rules incorporate many of the principles of our prior cases, including the requirement that an order of impoundment be entered only on a showing of "good cause." See Rule 7 of the Uniform Rules on Impoundment Procedure (1986). These rules contain specific procedures which must be followed if an order of impoundment is to issue. For example, an order of impoundment must state precisely what material is to be impounded and specify the duration of the order.[15] See Rule 8 of the Uniform Rules on Impoundment Procedure (1986). Given the changes in impoundment procedures, counsel is now on notice that impoundment will not be routinely granted and that orders of impoundment must comply with the procedures and requirements set out in the rules.[16]

---

[14] We adopted this requirement of a showing of overriding necessity, in part, because of the great public interest in disclosure of all information relevant to misuse of authority and official wrongdoing. *George W. Prescott Publishing Co., supra* at 279-280. These factors which contributed to the strong public interest in publicity and full disclosure are not present here. In contrast, the public interest in the discovery process is "in seeing that the process works and the parties are able to explore the issues fully without excessive waste or delay." *Anderson* v. *Cryovac, Inc., supra* at 12. Public access to this process might actually complicate and burden discovery. *Id.* See *Seattle Times Co., supra* at 35.

[15] The broad order of impoundment at issue here might well have been more narrowly drawn under the new rules.

[16] Counsel in future cases would be well advised to scrutinize carefully those documents that are filed with the court. For example, parties may

Because the rules of impoundment procedure were not effective until after the order of impoundment here, the rules do not apply in this case. We affirm the order of the judge granting summary judgment to the defendants and dismissing the plaintiff's complaint.

*Judgment affirmed.*

---

agree not to file with the court deposition transcripts which contain information of a private nature. The parties also may choose to file a voluntary stipulation of dismissal, instead of the settlement agreement, if they seek to prevent public access to their settlement agreement. See *Bank of Am. Nat'l Trust & Sav. Ass'n* v. *Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986).