NEWSPAPERS OF NEW ENGLAND, INC. *vs.* CLERK-MAGISTRATE OF THE WARE DIVISION OF THE DISTRICT COURT DEPARTMENT & others.[1]

Hampshire. September 13, 1988. — December 22, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Public Record. Practice, Criminal*, Impoundment order, Fair trial, Public trial. *Constitutional Law*, Public trial, Freedom of speech and press, Impoundment order. *Search and Seizure*, Warrant, Affidavit.

An affidavit in support of a search warrant when filed upon the return of the warrant is a public document. [631] WILKINS, J., concurring.

In a murder case, a District Court judge appropriately on her own motion impounded an affidavit in support of a search warrant filed with the court where good cause, i.e., the government's interest in the defendant's right to a fair trial, existed for the order. [631-634] WILKINS, J., expressed his view on the standards governing impoundment of judicial documents.

Discussion of cases addressing claims under the First Amendment to the Constitution of the United States of a right of access to judicial proceedings and judicial documents. [634-637]

There was no constitutionally guaranteed right of public access to an affidavit in support of a search warrant filed in the District Court, where the request for the document was made at such an early stage in the criminal proceedings that disclosure of the document might have deprived the defendant of his right to a fair trial unimpaired by prejudicial pretrial publicity. [637]

No basis existed after a defendant's trial and conviction for continuing in effect an order impounding an affidavit in support of a search warrant, properly entered at an early stage of criminal proceedings to protect the defendant's right to a fair trial. [637-638]

CIVIL ACTION commenced in the Ware Division of the District Court Department on July 14, 1987.

The case was heard by *Ann M. Gibbons*, J.

---

[1] District Attorney for the Northwestern District, and Kenneth Phoenix. Neither the district attorney nor Phoenix is a party to this appeal.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Raymond R. Randall* for the plaintiff.

*H. Reed Witherby*, Assistant Attorney General, for the Clerk-Magistrate of the Ware Division of the District Court Department.

*James C. Heigham*, for Massachusetts Newspaper Publishers Association, amicus curiae, submitted a brief.

LYNCH, J. The plaintiff, Newspapers of New England, Inc., filed an action in the Ware Division of the District Court Department, challenging a judge's order impounding an affidavit in support of a search warrant issued in the course of an investigation which ultimately led to the indictment and conviction of Kenneth Phoenix for murder in the first degree.[2] The judge had impounded the affidavit during the pendency of the criminal proceedings against Phoenix. The judge who impounded the affidavit reported this action to the Appellate Division of the District Court,[3] which upheld the impoundment order. The plaintiff appealed, and we transferred the case to this court on our own motion. We conclude that, at the time the order was issued, the judge did not abuse her discretion in impounding the affidavit.[4]

There is no material dispute concerning the facts. On July 3, 1987, police arrested Kenneth Phoenix for the August 4, 1986, murder of Raymond Green, and Phoenix was arraigned in the District Court on July 6, 1987. Prior to the arrest, a

[2] The plaintiff commenced the action according to the procedures established in *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1977).

[3] In *Ottaway Newspapers, Inc.* v. *Appeals Court, supra,* we noted that an action filed challenging an impoundment order will end in a judgment appealable under "ordinary rules." While an appeal under "ordinary rules" may be different from a report to the Appellate Division pursuant to Dist. Mun. Cts. R. Civ. P. 64 (1988), we need not decide the issue since it was neither briefed nor argued. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See Rule 8 of the Rules of the Trial Court (1988); Rule 12 of the Uniform Rules of Impoundment Procedure (1988); S.J.C. Rule 1:15, inserted by 401 Mass. 1301 (1988).

[4] Since there has been a public trial which resulted in the conviction of Phoenix and since the plaintiff does not now seek, nor Phoenix oppose, the disclosure of the affidavit the case is clearly moot. At the request of the parties and because of the strong public interest in the matter we nevertheless decide the case.

Superior Court judge had issued a search warrant which was executed and later returned to the Ware District Court on July 9, 1987.

On the day the warrant was returned, a reporter for the Holyoke Transcript-Telegram, a newspaper published by the plaintiff, requested access to both the search warrant and the affidavit. The clerk-magistrate allowed the reporter to see the search warrant, but denied access to the affidavit. After another request on July 10, 1987, a judge held an open hearing at which the plaintiff's counsel requested access to the affidavit claiming it was a public record. Neither the Commonwealth nor Phoenix had filed a motion to impound. The District Court judge ruled that, even if the newspaper had a legal right of access to the affidavit, that right must be balanced against Phoenix's right to a fair trial in a pending case. After reviewing the affidavit and balancing these competing rights, the judge, sua sponte, ordered the affidavit impounded. Although Phoenix had been arrested and arraigned in the District Court, neither he nor his counsel was present at the July 10, 1987, impoundment hearing.

On July 14, 1987, the plaintiff commenced the present action challenging the judge's July 10, 1987, impoundment order. A hearing was held on July 21, 1987, at which the judge upheld her earlier decision to impound the affidavit. Although the judge ruled that the affidavit was not a public record and the newspaper did not have a present legal right of access, she further ruled that, even if there were such a right, after balancing the right of access against Phoenix's fair trial rights and considering corrective alternatives, justice required impoundment. Phoenix was represented at this hearing and opposed the plaintiff's request that the order of impoundment be vacated.[5] The Appellate Division ruled that, although the newspaper had a right of access under the First Amendment to the United States

---

[5] At the time this hearing was held, the defendant had yet to be indicted on the murder charge. Also, the requested access was prior to any suppression or other pretrial hearing at which the affidavit or its contents may have been at issue.

403 Mass. 628                                          631

Newspapers of New England, Inc. *v.* Clerk-Magistrate of the Ware Division of the District Court.

Constitution to the affidavit, the impoundment order satisfied constitutional standards.

The plaintiff maintains its right to immediate access to the affidavit upon its return to and filing with the court. We first decide whether the impoundment order was correct under our statutory or common law and only then, if necessary, do we decide if any constitutional principles are affected.

1. *Public record.* The judge ruled that an affidavit in support of a search warrant is not a public record, and, therefore, the plaintiff had no present right of access. However, G. L. c. 276, § 2B (1986 ed.), provides in relevant part: "Upon the return of said warrant, the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned." On its face the statute provides, in effect, that, once the warrant and affidavit have been returned to the court, they become public documents.

The affidavit's status as a "public" document does not rest entirely on G. L. c. 276, § 2B. The Federal courts have recognized a generalized right of access to public records, including judicial records and documents. See, e.g., *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *United States* v. *Criden*, 648 F.2d 814 (3d Cir. 1981); *Application of Nat'l Broadcasting Co.*, 635 F.2d 945 (2d Cir. 1980). Our prior decisions also espouse a "general principle of publicity" applicable to judicial proceedings.[6] *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 546 (1977), quoting *Commonwealth* v. *Blondin*, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950). On filing with the court the affidavit is a public document both under the statute and the common law.

2. *Impoundment authority.* The fact that search warrant affidavits are "public records" does not mean that a court lacks impoundment authority. As we have said recently: "It is within the discretion of a court to impound its files in a case and to

---

[6] In *Sibley* v. *Holyoke Transcript-Telegram Publishing Co.*, 391 Mass. 468, 471 (1984), we held that the issuance of a search warrant, whether by a judge or by a clerk, involves the exercise of judicial discretion and constitutes a "judicial proceeding."

deny public inspection of them, and that is often done when justice so requires." *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 329 (1987), quoting *Sanford* v. *Boston Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945). See *George W. Prescott Publishing Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 277 (1985); *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 546; Rule 8 of the Rules of the Trial Court; Uniform Rules of Impoundment Procedure (1988). The plaintiff concedes that the judge possessed inherent authority to impound the affidavit, but questions the appropriateness of her doing so in the present case.

In *H.S. Gere & Sons, supra*, the plaintiff sought relief from an impoundment order sealing the entire file, including the settlement agreement, in a civil case. There we stated that the judge must balance the parties' privacy concerns against the "general principle of publicity." *Id.* at 329. Through this balancing process, "a judge must determine whether 'good cause' to order impoundment exists and must tailor the scope of the impoundment order so that it does not exceed the need for impoundment." *Id.*, citing *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 550 n.17 (the scope of an impoundment order should not exceed the need). See Rule 8 of the Rules of the Trial Court; Rule 7 ("good cause" requirement) and Rule 8 (order must specify material to be impounded and duration) of the Uniform Rules of Impoundment Procedure. It should be noted, however, that in this case the judge was not balancing the competing interests of publicity against privacy but rather balancing publicity against a defendant's right guaranteed by the Sixth Amendment to the United States Constitution to a fair trial.

Protecting a defendant's right to a fair trial is undeniably a substantial government interest. *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*) ("No right ranks higher than the right of the accused to a fair trial"). In *Gannett Co.* v. *DePasquale*, 443 U.S. 368 (1979), the Supreme Court emphasized the importance of a defendant's fair trial right when considering a claim of access to a pretrial suppression hearing. The Supreme Court stated,

*supra* at 378: "This Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. . . . To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." (Citations omitted.)[7]

Here, the plaintiff asserts its right of access to the affidavit immediately upon its filing in court, prior to Phoenix's being indicted, prior to any suppression hearings, and presumably prior to the defendant or his attorney's having an opportunity to read it. Furthermore, it is to be noted that the murder took place in a small rural community where the murder, the year-long investigation, and the arrest of Phoenix received extensive news media coverage. See *Columbia Broadcasting Sys.* v. *United States Dist. Court*, 729 F.2d 1174, 1181 (9th Cir. 1983) ("Almost all the cases in which the Supreme Court has found that press coverage deprived the defendant of a fair trial have been tried in small rural communities"). See also *Sheppard* v. *Maxwell*, 384 U.S. 333, 361 (1966) ("Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused"). The judge's findings demonstrate that she relied on the nature of the community; the prearrest, investigatory nature of the information contained in the sixteen-page affidavit; the multiplicity of sources for the information contained in the affidavit; that some of the information may be suppressible or inadmissible at trial and that a warrant need only be supported by a showing of probable cause.

---

[7] In *Gannett Co.*, *supra* at 392-393, the Supreme Court upheld Judge DePasquale's decision to close a suppression hearing to the public and media. Although the Court might have decided *Gannett Co.* differently if the case had arisen subsequent to its decisions in *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980) (First Amendment right of public to attend criminal trials); *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596 (1982) (same); *Press-Enterprise I*, *supra* (voir dire proceedings); *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (preliminary hearings as conducted in California), the Court's observations regarding the importance of a defendant's fair trial right and a court's affirmative duty to protect that right still apply.

We conclude that good cause existed for impounding the affidavit on July 10, 1987, and, therefore, there was no common law or statutory impediment to her action.[8]

3. *First Amendment right of access.* In challenging the impoundment order the plaintiff argues that the First Amendment, applicable to the States through the Fourteenth Amendment to the United States Constitution, provides a qualified constitutional right of access to the affidavit that can be denied only on a showing of a compelling governmental interest. The plaintiff relies on a quartet of recent Supreme Court decisions articulating a First Amendment right to open criminal proceedings. *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980). *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596 (1982). *Press-Enterprise I, supra. Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1 (1986). (*Press-Enterprise II*). See note 7, *supra.*

None of the four Supreme Court decisions dealt with the right of access to pretrial, prearrest investigative documents but rather the First Amendment claim in those cases was based on a right of access to the actual criminal proceeding in question. In *Richmond Newspapers, Inc., supra* at 580, the Court held that the First Amendment guaranteed the public the right to attend criminal trials. In *Globe Newspaper Co., supra* at 611 & n.27, the Court struck down a rule of automatic mandatory closure of the courtroom during the testimony of minor victims in a sexual offense trial. The Court then concluded that the First Amendment right of access to a criminal trial included a voir dire hearing in the course of trial. *Press-Enterprise I, supra* at 505-510. Finally, in *Press-Enterprise II, supra*

---

[8] In *George W. Prescott Publishing Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 279, 282 (1985), we ruled that, although an impoundment order is ordinarily within the sound discretion of the trial judge, when the documents concern a public official's conduct in office, they may be impounded only on a showing of "overriding necessity" based on specific findings. This heightened standard was based in part on our recognition that public officials have significantly diminished privacy interests with respect to information relevant to their conduct in office. *Id.* at 278. In the present case, however, the judge was not balancing the publicity interest against a public official's privacy interest but rather the publicity interest against a defendant's fair trial interest, and therefore the "overriding necessity" standard is inapplicable.

403 Mass. 628 635

Newspapers of New England, Inc. *v.* Clerk-Magistrate of the Ware Division of the District Court.

at 10, 12, the Court held that the right of access applied to a preliminary hearing conducted in California, noting that "public access to criminal trials and the selection of jurors is essential to the proper functioning of the criminal justice system" and "California preliminary hearings are sufficiently like a trial to justify the same conclusion."

These cases articulate a two-part test for determining whether a First Amendment right of access applies to any particular proceeding. First, the proceeding must have an historic tradition of openness, and second the public's access must play "a significant positive role in the functioning of the particular process in question." *Press-Enterprise II, supra* at 8. In applying this test to claims of a constitutional right of access to judicial documents, some courts have looked to the proceeding to which the documents relate.[9] See, e.g., *Press-Enterprise II, supra* at 10-13 (right to transcript of preliminary hearing based on right of access to hearing itself); *Press-Enterprise I, supra* at 513 (right to transcript of voir dire based on right of access to voir dire itself); *Matter of the New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (access to documents filed in connection with pretrial suppression motion based on access to hearing); *In re Washington Post Co.*, 807 F.2d 383, 389-390 (4th Cir. 1986) (First Amendment right of access to plea and sentencing hearings carries with it right to documents filed in connection with the hearing); *Associated Press* v. *United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (access to pretrial proceedings carries with it right to pretrial documents). The affidavit in question has no integral relationship with any particular pretrial proceeding to which the public enjoys a First Amendment right of access.

---

[9] The plaintiff concedes that the proceedings at which search warrants are issued have not been traditionally open and does not assert any right to attend those proceedings. Additionally, in *Press-Enterprise II, supra* at 9, the Supreme Court emphasized that "there are some kinds of government operations that would be totally frustrated if conducted openly," citing grand jury proceedings as an example. For obvious reasons, proceedings at which a judge or clerk issues a search warrant fall squarely within the same category.

*Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589 (1978), is the only Supreme Court decision dealing with the more narrow issue of a constitutional right of access to court records outside the confines of a criminal proceeding. There, the Court rejected the claim that the First Amendment mandated the release of the "Watergate tapes" played at trial.[10] *Id.* at 608-610. In *United States* v. *Hickey*, 767 F.2d 705, 709 (10th Cir. 1985), the United States Court of Appeals for the Tenth Circuit relied on *Nixon* in rejecting a First Amendment right of access claim to a sealed plea bargain agreement and held that only a common law right of access existed with regard to judicial records.

Two courts have addressed the issue of a First Amendment right of access to search warrant affidavits, and have come to opposite conclusions. In *Seattle Times Co.* v. *Eberharter*, 105 Wash. 2d 144 (1986), the plaintiff sought access to a search warrant affidavit filed with the court. The Supreme Court of Washington held that a common law and not a First Amendment standard governed the sealing of a search warrant affidavit in a case where a criminal complaint had yet to be filed. *Id.* at 147. Applying the two-part test to determine whether a First Amendment right of access exists, the court ruled: (1) "Unlike trials, the historical record reveals no English or American tradition of public access to search warrants," and (2) "review will occur when the prosecution attempts to introduce, at trial, evidence obtained as a result of this probable cause determina-tion . . . [and] immediate public access is not required for the effective functioning of the process itself."[11] *Id.* at 152-153.

---

[10] One authority suggests that one factor which may account for the right of access distinction between records and criminal trials or proceedings is that the Sixth Amendment guarantees a public trial. See L. Tribe, American Constitutional Law § 12-20, at 959 (2d ed. 1988).

[11] The court in *Eberharter* was careful to limit its ruling to prearrest affidavits and indicated that an impoundment order should be reevaluated upon the filing of criminal charges. We note, however, that the effectiveness of the check on judicial conduct provided by a constitutionally protected right of public access to a search warrant affidavit is not seriously diminished if that right does not attach until a time when the affidavit is integrally related to a proceeding in which the public enjoys a First Amendment right

On the other hand, the United States Court of Appeals for the Eighth Circuit recently divided on the question while upholding the judgment of the District Court denying access to a search warrant affidavit.[12] *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988). We think the opinion of the Supreme Court of Washington hews more closely to the principles enunciated by the Supreme Court.

Furthermore it is not to be forgotten that, in the present case, Phoenix's Sixth Amendment right to a fair trial is being invaded by disclosure and that, when the plaintiff first asserted its right of access to the search warrant affidavit, Phoenix had yet to be indicted or subject to any criminal proceeding where the affidavit was in issue. There can be no doubt that in appropriate circumstances a defendant can require the closure of a pretrial suppression hearing and the impoundment of the documents involved in that hearing. *Press-Enterprise II, supra* at 14-15. It would therefore appear to be contrary to a defendant's inchoate rights to conclude that First Amendment rights of public access attach to documents inculpating a defendant at such an early stage in the proceeding so as to deprive or seriously impair a defendant's ability to assert those rights.

We, therefore, conclude that no constitutionally guaranteed right of access to the affidavit existed at the time the plaintiff

---

of access. On the other hand, where one of the primary purposes of impounding a search warrant affidavit is to protect a criminal defendant from prejudicial pretrial publicity, requiring disclosure at such an early stage of the prosecution may make that protection virtually impossible.

[12] Judge McMillan, writing for the court, said that a First Amendment right attached upon the filing of the affidavit but concluded that the District Court judge had satisfied the constitutional requirements for impounding the affidavit. *In re Search Warrant for Secretarial Area Outside Office of Gunn, supra* at 572-573. Judge Bowman agreed that the warrant affidavit should be impounded but noted that since the common law right of access would yield the same result and "represents a workable and reasonable approach to the problem of balancing the public interest in immediate access against the competing public interest in fair and effective criminal investigations," the court should not decide the First Amendment claim. *Id.* at 575-576 (Bowman, J., concurring). Judge Heaney dissented, but agreed that the First Amendment applied and in reliance on facts not found by the District Court judge he concluded that the impoundment was not justified. *Id.* at 576 (Heaney, J., concurring and dissenting).

requested it, and that the District Court judge did not abuse her discretion in impounding the affidavit. No issue is raised before us concerning the breadth of the impoundment order. However, in light of the fact that Phoenix has been convicted after a trial which received substantial media coverage, it is clear that no basis now exists for the continued impoundment of the affidavit, and, therefore, the impoundment order is dissolved.

*So ordered.*

WILKINS, J. (concurring). This case deals with a claim of access to an affidavit asserted after a search warrant had been executed and returned to court and after criminal proceedings had been commenced. The newspaper makes no claim under the State Constitution. By statute and common law, the affidavit was public. In my view the judge's duties with respect to impoundment do not depend on whether there is a First Amendment right of access to such a document.

In many instances, there are clear governmental interests in the nondisclosure of the contents of such a filed affidavit, particularly prior to the completion of an investigation. It seems important in this respect that the prosecutor did not initially seek impoundment of the affidavit. In the face of a statute that made the affidavit public, I question whether a clerk-magistrate had any right to deny access to it. Although perhaps a judge could make an impoundment order on her own motion, in general the question of impoundment is one that a prosecutor should raise in protection of the government's interest and that a defendant (or target of the search) could raise in protection of his interests.

A judge confronted with a motion to impound or to lift an impoundment order must consider and decide the case on its particular facts. See Uniform Rules of Impoundment Procedure (1988); Rules 7 and 8 of the Rules of the Trial Court (1988). Cf. *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 609 (1982) (mandatory rule closing trial is unconstitutional).

No general principle, articulated in support of impoundment, can justify an impoundment without case-specific fact-finding. See *Globe Newspaper Co.* v. *Superior Court*, 383 Mass. 838, 852-853 (1981) (Wilkins, J., concurring), rev'd, 457 U.S. 596 (1982). Here, the judge's reason in support of impoundment was based solely on the threat to the criminal defendant's right to a fair trial, if any part of the affidavit were to be disclosed. The motion judge had to support such a conclusion by showing what facts would be unfairly prejudicial and how the criminal defendant's rights could not be reasonably protected other than by impoundment. Cf. *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 14 (1986) (access to preliminary criminal proceeding). Such findings and rulings themselves might have to be impounded in whole or in part. The facts the judge relied on (the sparcity of the local population; the fact the warrant was issued on only a showing of probable cause; and the fact that certain information in the affidavits came from many sources, would be suppressible, or would be inadmissible at trial) do not, without more, justify the impoundment.

The adverse consequences of disclosure of the contents of the affidavit would seem likely to have paled in comparison with the consequences of the disclosure, already made, that the criminal defendant had been charged with murder in the first degree. Could the affidavit have been redacted? Would not careful jury selection procedures at the time of trial, months later, eliminate any possible prejudice to the criminal defendant's right to a fair trial?

The question is now moot. We all agree the order should be dissolved. Thus there is no reason to seek new findings made on a proper standard. It would seem that an impoundment order such as was issued here should include a provision that it will automatically be dissolved at least as early as the conclusion of the criminal proceedings.