Gershengorn, J.
Plaintiff Globe Newspaper Co., Inc. (“the Globe”) filed this action, seeking to terminate the impoundment orders sealing the case number, docket sheet, pleadings, and trial exhibits entered in a prior case in Middlesex Superior Court, John Doe v. City of Cambridge (“the underlying case”). In addition to the Clerk of Middlesex Superior Court, the other named defendants here are all of the parties to the underlying case. John Doe, the City of Cambridge, and the Waltham-Weston Hospital have appeared before this Court, serving notice that the prior case involved privileged records.[1] Only John Doe (“Doe”) opposes the termination of the impoundment orders by this court. He challenges this Court’s jurisdiction to address the impoundment orders through an independent action; claims that the pretrial publicity that would follow from a modification of the impoundment order would inherently damage his right to a fair criminal trial in the future; and argues that he has not waived the privileges covering some of the records in the underlying case. For the following reasons, this Court MODIFIES the impoundment orders to ALLOW the Globe, or any other member of the public, access to the court records, as defined below, and certain of the trial exhibits in the underlying case. This Court also VACATES the impoundment order issued in the current case.

BACKGROUND

The underlying case involved an attempt by Doe to expunge all records of a civil mental health commitment that occurred in 1991 under the terms of G.L.c. 123, §12 (1986 & Supp. 2000); see also St. 2000, c. 249 (emergency restraint of dangerous persons after independent examination). Doe claimed both that ex-pungement was necessary to protect his reputation and business opportunities, and that the commitment had been based on allegations of abuse made by his wife which were later recanted. Eight days after filing his complaint, Doe filed an ex parte motion for impoundment, with an attached affidavit by Doe detailing many of the circumstances that led up to his commitment. The court allowed the motion (“the ex parte impoundment order”). The record does not reflect any opposition to that motion, and the parties and their counsel operated under a strict confidentiality stipulation during the proceedings. Before this Court, the Globe has entered into another confidentiality stipulation to preserve the current sealed state of the court records for the underlying case, until this Court has made its ruling.
In 1993, Doe entered into a separate agreement for judgment with The Arbour which further limited disclosure of Doe’s real identity and of the fact of his commitment. This agreement stated:
If at any time after entiy of this Permanent Injunction, The Arbour is informed of allegations of spousal abuse by or against plaintiff and in connection therewith. The Arbour is served with a duly authorized request or subpoena for plaintiffs medical records, The Arbour shall not be precluded by this permanent injunction from disclosing plaintiffs identity or his medical records from the requestor. Nevertheless, The Arbour shall give five business days notice in writing to counsel of record for plaintiff in this action before The Arbour makes disclosure.
Doe’s medical and mental health records from The Arbour remain impounded along with the court records for the underlying case.
In 1994, the court in the underlying case held a five-day, jury-waived trial in a closed courtroom. The court issued a written decision (“the final decision”), refusing to expunge any records. The court also entered judgment and an order (“the clarifying impoundment order”), sealing the court records and allowing Doe to place in his hospital and insurance records, a written statement by Doe giving his version of the commitment. The court further restricted disclosure of the hospital and insurance records to disclosure for insurance purposes only, and required, for future *502 access and disclosure, Doe’s written authorization or a subsequent court order issued only after written notice to Doe. The court’s final decision however included findings of fact concerning the evidence heard and exhibits viewed, thus disclosing and making part of the court records certain privileged information discussed by witnesses and referenced during the closed trial proceedings in the underlying.case.
All of the trial exhibits and certain other privileged records not introduced at trial (such as those of The Arbour), remain in the court records for the underlying case. The trial exhibits also include privileged records and documents pertaining to parties other than Doe. None of the parties in the underlying case appealed the court’s final decision or the court’s clarifying impoundment order.
DISCUSSION I. Questions of Authority
Doe both challenges this Court’s authority to rule on the merits of the present case, in light of the final decision and the clarifying impoundment order in the underlying case, and argues that the Globe is not an appropriate party to bring this action.
A. This Court’s Authority 1. This Court Has Authority under the Uniform Rules
Doe argues that this court has no authority to review an impoundment order issued as part of a final judgment, contending that either the judge who presided over the trial in the underlying case is best associated with the facts that led to the original orders, or that Rule 12 of the Uniform Rules of Impoundment Procedure (“Uniform Rules”) allows for review of impoundment orders only, by “a single justice of an appellate court.”
The Uniform Rules, however, as incorporated into the rules of this court, see Trial Court Rule VIII, explicitly permit third parties to later challenge impoundment orders, and allow for courts to later modify those orders. See, e.g., Uniform Rule 4 (allowing notice for “interested third persons”); Uniform Rule 6 (permitting third parties to ask for a hearing even without having received notice); Uniform Rule 10 (allowing for modification of impoundment orders on motion by these “interested third persons,” regardless of whether they originally received notice); see also Rule 7 of the Uniform Rules (stating that agreement of the parties is not sufficient to impound court records, so an impoundment order should always be subject to a future challenge in the name of the public); accord Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 600-01 (2000) [hereinafter Herald]; H.S. Gere & Sons, Inc. v. Frey, 400 Mass. 326, 329 n.7 (1987) [hereinafter Frey]. Furthermore, the thrust of the standards for issuing an impoundment order is that these orders may operate for a limited time only. See Uniform Rule 3 (ex parte impoundment may not last longer than ten days); Rule 8 (order of impoundment must “specify the duration of the order”). Even Uniform Rule 11, which applies to “material impounded by statute, court rule, or standing order,” notes that "the procedure otherwise set forth in these rules shall govern requests for relief from impoundment to the extent practicable”!;] it does not confine the possibility of a challenge to the appellate courts, or to a particular judge. This Court does not believe that the intent of the Uniform Rules was for parties years later to seek out the author of the original impoundment order when bringing challenges, or when seeking modifications to those orders issued as part of a final judgment.
2. This Court Has Inherent Authority to Address a Claim of Access to Court Records.
This Court also possesses inherent authority to address a claim of public access to records in court custody. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1977). In George W. Prescott Publishing Co. v. Register of Probate for Norfolk County, 395 Mass. 274, 276-77 (1985) [hereinafter Prescott Publishing], the Supreme Judicial Court noted that a different judge had addressed the plaintiffs motion to vacate the impoundment order, and would address it again on remand. The court also explained that an' absolute rule of impoundment, in that case a statute restricting access to financial papers submitted in a divorce case, “must be interpreted ..., so as to permit a challenge to the impoundment. . .” Id. at 280. Here too, the clarifying impoundment order, even if part of the court’s final judgment, must permit some opportunity for future review. Many federal appellate courts have come to similar conclusions, ruling that parties challenging these orders, such as the Globe, do not seek to disturb the merits of the underlying civil case; rather, they seek to intervene only to inform the public. See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 786 (1st Cir. 1988), cert. denied, 488 U.S. 1030 (1989); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777-80 (3d Cir. 1994) (citing cases); Mokhiber v. Davis, 537 A.2d 1100, 1105 (D.C. App. 1988).
B. The Globe Properly Came before This Court through an Independent Action
Because the Globe could not gain access to even the case number or docket sheet in the underlying case, the Globe came before this Court in an independent action. Rule 60(b) of the Massachusetts Rules of Civil Procedure allows the court to address such a claim. The rule states, in pertinent part:
This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of review, of error, of audita querela, and petitions to vacate judgment are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.
*503 Mass.R.Civ.P. 60(b). The federal courts have also noted this alternative option for the media and for other parties in collateral litigation. See Public Citizen, 858 F.2d at 781 (discussing analogous federal rule); Pansy, 23 F.3d at 778 n.4; see also Ex Parte Uppercu, 239 U.S. 435, 441 (1915).
The Globe properly approached the court by following the procedure approved in Ottaway Newspapers v. Appeals Court, 372 Mass. 539, 551 (1977) [hereinafter Ottaway] and used again in Prescott Publishing. In Ottaway, 372 Mass. at 551 (citations omitted), the Supreme Judicial Court declared,
[A] stranger seeking relief against an impoundment order may bring a civil action in the court which issued it, joining the clerk of that court in his official capacity and the parties to the action or at least any who obtained or may defend the order. It is unnecessary to further characterize such an action; a publisher has standing to maintain suit to vacate an impoundment order entered in a separate action.
This procedure governed challenges to impoundment orders issued before the adoption of the Uniform Rules, but after the adoption of the Uniform Rules, the same underlying principles still govern the press’s right of access and the court’s power. See, e.g., Public Citizen, 858 F.2d at 786; Mokhiber, 537 A.2d at 1105; see also Uppercu, 239 U.S. at 441.
II. The Merits
A. The Globe’s Common Law Right of Access to the Court Records
The parties in this case raise arguments concerning (1) the impoundment orders from the underlying case that restrict access to the pleadings, case number, and docket sheet; and (2) the privileges, statutes, and regulations that protect from generalized disclosure outside of court the medical, mental health, hospital, and insurance records used as trial exhibits. Because these otherwise confidential documents, along with other privileged records not used at trial, continue to be among the court records for the underlying case, the Globe seeks access to them as well. Doe argues that allowing access to any of the court records, whether it be the pleadings or the trial exhibits, would violate his Sixth Amendment rights and vitiate the partial relief he gained from the clarifying impoundment order. The Globe contends that it has a common law right of access to the court records and to the trial exhibits, regardless of the Sixth Amendment or the impoundment orders in the underlying case.
This Court agrees with the Globe’s initial contention that the public has a common law right of access to the court records in the underlying case. In Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978), the Supreme Court “recognized a general right to inspect and copy public records and documents, including judicial records and documents.” See also Ottaway, 372 Mass. at 546 (“affirm[ing] with emphasis . . . , the ‘general principle of publicity’ ”) (citations omitted). Under Uniform Rule 10, this Court may modify or maintain an impoundment order, using a standard of “good cause,” the same standard that governed the original issuance of the original impoundment order. See Uniform Rule 7; see also Herald, 432 Mass. at 604. In evaluating good cause, “the court shall consider all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reasons” for the impoundment. Uniform Rule 7; see also Herald, 432 Mass. at 604-05; Frey, 400 Mass. at 329 (“a judge must balance the privacy issues against the ‘general principle of publicity’ ”). A court modifying an impoundment order also must “tailor the scope of the impoundment order so that it does not exceed the need for impoundment.” Newspapers of New England v. Clerk-Magistrate of the Ware Div. of the Dist Ct., 403 Mass. 628, 632 (1988), cert. denied, 490 U.S. 1066 (1989) [hereinafter Newspapers of New England], citing Ottaway, 372 Mass. at 550 n. 17. This tailoring is especially important where the court in the underlying case allowed for blanket impoundment orders that covered all of the pleadings, exhibits, and trial proceedings.
Balancing these interests, this Court finds that Doe’s reputation and business interests — his grounds for bringing the underlying case — are both insufficient to overcome the Globe’s common law right of access. At present, particularly in light of Doe’s pending indictment for his wife’s murder, many of the facts and allegations contained in these documents are already in the public domain. See Herald, 432 Mass. at 608; see also Prescott Publ’g, 395 Mass. at 278-79. As the Supreme Judicial Court recently stated in another case allowing access to court records, the difference between the information that has been disseminated already and the additional information that would become public as a result of the modification of the impoundment order sought here “is ‘merely a difference in degree.’ ” Herald, 432 Mass. at 609-610 n. 30 (citation omitted). In these circumstances, Doe’s reputation and business interests, as well as the current reasons for continued impoundment, are all correspondingly diminished. See id. at 612.
Furthermore, the community interest in this case is quite strong. The murder of Doe’s wife, whose alleged recantation represented the grounds for Doe to challenge his commitment, is unquestionably a matter of “public concern.” Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 132 (1998). Community interest in the troubled relationship between Doe and his wife is considerable, Herald, 432 Mass. at 594, 606-07; see also Johnson v. Greater Southeast Community Hosp. Corp., 951 F.2d 1268, 1277-78 (D.C.Cir. 1991); Arkwright Mutual Ins. v. Garrett & West, Inc., *504 782 F.Sup. 376, 381 (N.D.Ill. 1991), and the public interest in the underlying case accordingly extends beyond the normal need to assess whether justice was done. Cf. Herald, 432 Mass. at 606-07; see also Cowley v. Pulsifer, 137 Mass. 392, 393-94 (1884). Public understanding of future proceedings involving Doe also will invariably suffer if the public does not have access to these documents. See Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 560-561 (1976) [hereinafter Stuart]; see also Herald, 432 Mass. at 609 n. 29. Those same reasons support public access to the clarifying impoundment order, the ex parte impoundment motion, and the attached affidavit, and to the agreement for judgment with The Arbour. Cf. Herald, 432 Mass. at 593 (explaining that certain documents may have an "integral relationship” to those proceedings).
Doe’s Sixth Amendment rights do not compel a different result. This Court acknowledges the high position occupied by the constitutional rights of an individual facing criminal prosecution, Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508 (1984); see also Newspapers of New England, 403 Mass. at 632, quoting Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979); nevertheless, as the Supreme Judicial Court has recently explained, there are many alternatives that may protect the accused’s Sixth Amendment rights, including postponement of a trial, individual voir dire, sequestration, specific jury instructions, a change of venue, and even suppression of some of the evidence and information contained in these records, see Herald, 432 Mass. at 608-09 & nn. 28-29; see also Gannett, 443 U.S. at 378-79 & n. 5, citing Stuart, 427 U.S. at 562-65; Sheppard v. Maxwell, 384 U.S. 333, 357-62 (1966).
Having balanced the interests involved in this case, this Court determines that the impoundment orders as to the court records should be modified. Thus, this Court VACATES and MODIFIES the impoundment orders in the underlying case to ALLOW the Globe, or any other member of the public, access to certain of the court records from the underlying case, including:
1. The docket sheet and case number;
2. Doe’s complaint;
3. The ex parte impoundment order and the attached affidavit;
4. The final decision and clarifying order;
5. The pleadings; and
6. The Agreement for Judgment with The Arbour.
This Court further VACATES the impoundment order on the docket number, name, and court records for the current case, except for a copy of Doe’s application for temporary hospitalization, shown to the court but not formally admitted as an exhibit. Various portions of these and other documents in both files have been redacted to maintain the privileges surrounding Doe’s records, as this Court explains below. The originals for the underlying case have been placed in an envelope designated “B.”
C. The Other Privileged Records and the Trial Exhibits
As noted above, the court records for the underlying case include documents used as trial exhibits that are otherwise privileged, including certain privileged records of persons other than Doe. Furthermore, some of the information in Doe’s mental health records concern persons other than Doe, and Doe’s records from The Arbour continue to be among the court records. The Globe argues that the First Amendment extends the common law right of access to exhibits referenced in a civil proceeding, arguing that every litigant loses certain privacy rights to documents merely by filing in court. Doe argues to the contrary that he did not waive his privacy rights by filing his case; instead, he asserts that he sought protection at every step for the privileged records he used to challenge his commitment. Indeed, by issuing the impoundment order in the underlying case, the court, Doe argues, recognized Doe’s legitimate interest in privacy.
The First Amendment extends the common law right of access to court records to those exhibits’ introduced or referenced in open civil proceedings and decisions, and now a part of court records.[2] See, e.g., Poliquin v. Garden Way, Inc., 989 F.2d 527, 533 (1St Cir. 1993); Joy v. North, 692 F.2d 880, 893-94 (2d Cir. 1982), cert. denied, 460 U.S. 1051 (1983); Republic of the Phillipines v. Westinghouse Elec. Corp., 949 F.2d 653, 659-62 (3d Cir. 1991); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073-74 (3d Cir. 1984); Stone v. University of Md. Med. Sys., 948 F.2d 128, 131 (4th Cir. 1991); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179-81 (6th Cir. 1983), cert. denied, 465 U.S. 1100 (1984); In the Matter of Continental Ill. Sec. Litig., 732 F.2d 1302, 1308-16 (7th Cir. 1984) [hereinafter Continental Ill. Sec. Litig.]; see also In re Agent Orange Product Liability Litig., 98 F.R.D. 539, 545 (E.D.N.Y. 1983); Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 529 F.Sup. 866, 887-89, 895-05, 908-15 (E.D.Pa. 1981) [hereinafter Zenith]. As the Supreme Court explained in Nixon, 435 U.S. at 598, however, the common law right of public access to court records “is not absolute. Every court has supervisory power over its own records and files ...” “The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.” Id. at 599; see also Herald, 432 Mass. at 604-05. Whether a state may restrict access to a particular proceeding or cause of action “depends not on the historical openness of that type of. . . trial, but rather on the state interests supporting the restriction.” Globe Newspaper, 457 U.S. at 605 n. 13; see also Herald, 432 Mass. at 605 n. 24, 606.
The Globe argues that the special nature of an expungement proceeding is insufficient to warrant a *505 total closure on all records and proceedings in the underlying case. “The scope of an impoundment should not in any case exceed the need.” Ottaway, 372 Mass. at 550 n. 17. Here, recognizing that Doe sought to maintain privacy and confidentiality in the underlying case indeed, as noted above/ the underlying proceedings were closed, and recognizing further that civil litigants have many tools for maintaining the privacy of their discovery material, evidence, and arguments, the court does not agree that Doe waived all rights upon instituting litigation. Indeed, under the Uniform Rules this court must take into account “the type of information and the privacy interests involved. ” Uniform Rule 7; see also Prescott Publ’g, 395 Mass. at 277-79, 280-82 (considering, separately, disclosure of three different types of private materials in the context of a public official’s divorce); Ottaway, 372 Mass. at 546 & n. 9, 550 n.17 (considering the possibility of selective disclosure in a case dealing with sensitive bank records).
The courts have thus recognized that courts maintain discretion to limit access to privileged records or other documents held in court records, even though a First Amendment right of access maybe present. See, e.g., In re Knoxville News-Sentinel Co., Inc., 723 F.2d 470, 476-78 (6th Cir. 1983) [hereinafter Knoxville News-Sentinel]; Continental Ill. Sec. Litig., 732 F.2d at 1312-13; Zenith, 529 F.Sup. at 904-05, 914-15; see also In re Policy Mgmt. Sys., Corp., 67 F.3d 296, 1995 WL 541623, *3-4 (4th Cir. 1995) (unpublished); cf. Littlejohn v. BIC Corp., 851 F.2d 673, 680-83 (3d Cir. 1988); accord Herald, 432 Mass. at 605-06 & n. 26. Court records for example, are not subject to the public records statute. See Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 157 (1945).
Here, the plethora of statutes and regulations surrounding the confidentiality of mental health records evidence our state’s strong interest in limiting the dissemination, outside of court proceedings, of certain of the materials held along with the court records for the underlying case. These include:
1. General Laws, chapter 111, Section 70E(b) (1996) that states: “Every patient or resident of a facility shall have the right to confidentiality of all records and communications to the extent provided by law.”
2. The specific exemption of Medical records from the Massachusetts Public Records Law, G.L.c. 66, §10 (1988 & Supp. 2000). See Globe Newspaper Co. v. Chief Med. Officer, 404 Mass. 132, 134-35 (1989); Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 434-38 (1983); see also G.L.c. 111, §70 (1996).
3. General Laws, chapter 123, Section 36 (1986 & Supp. 2000) which states, in pertinent part:
The department [of mental health] shall keep records of the admission, treatment and periodic review of persons admitted to facilities under its supervision. Such records shall be private and not open to public inspection whether or not in connection with pending judicial proceedings . . . The Section shall govern the patient records of the department notwithstanding any other provision of law.
4. General Laws, chapter 233, Section 20B (2000) which states, in pertinent part:
Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional condition.
5. Massachusetts regulation, 104 Code Mass. Regs. §3.19(5) (1991), which provides, in pertinent part: “All individual patient records are private, not open to public inspection, and accessible only under the provisions of M.G.L.c. 123, §36 and §36A and 104 CMR 2.07.” See also 104 Code Mass. Regs. §27.17(6) (1998).
6. Massachusetts regulation, 104 Code Mass. Regs. §2.07 (1991), which provides, in pertinent part: “All records relating to any persons admitted to or treated by a facility under the supervision and control of or licensed by the Department shall be private and not opened to public inspection except as provided in 104 CMR 207(3).” See also 104 Code Mass. Regs. §27.17(6) (1998).
Furthermore, General Laws, chapter 123, Section 36A (1986 & Supp. 2000) states, in pertinent part and specifically as to commitment examinations:
All reports of examinations made to a court . . ., shall be private except in the discretion of the court. All petitions for commitment, notices, orders of commitment and other commitment papers used in proceedings . . . shall be private except in the discretion of the court. Each court shall keep a private docket of the cases of persons coming before it believed to be mentally ill. . .
(Emphasis added.) The legislative import is clear: to protect the confidentiality of these records, unless it is necessary to make them public. This Court also notes that the facts and allegations detailed in some of the trial exhibits were also private family matters of the type that the Supreme Judicial Court has already suggested might validly be kept private. See Frey, 400 Mass. at 330 n. 8, citing Prescott Publ’g, 395 Mass. at 278.
The Globe finally argues that, because Doe is now charged with his wife’s murder, he has become at least a limited, or involuntary, public figure. See, e.g., Restatement (Second) Torts §652d, comments f, h (1977). The Supreme Court has, however, found that those *506 drawn into court to protect their reputation or by virtue of a criminal investigation are not necessarily public figures for all parts of their lives. See Wolston v. Reader’s Digest Ass’n, Inc., 443 U.S. 157, 168-69 (1979), citing Time, Inc. v. Firestone, 424 U.S. 448, 457 (1976). In the same fashion as the defamation plaintiffs in Wolston and Time, Inc., Doe has been drawn into court proceedings to protect himself; he is not an involuntary public figure solely by virtue of his alleged participation in a crime. See Newspapers of New England, 403 Mass. at 634 n. 8; Frey, 400 Mass. at 330 & n. 8 (both discussing different standards for impoundment in the context of public officials, as opposed to criminal defendants and non-public figures).
There are, in addition, other considerations supporting this Court’s decision in favor of selective disclosure. Some of the trial exhibits and Doe’s medical records from The Arbour, not admitted at trial, include references to other persons beyond Doe who have not had the opportunity to assert their privacy rights. See Knoxville News-Sentinel, 723 F.2d at 476-78. These persons should be given notice of the Globe’s request and have the opportunity to object to public dissemination of information concerning them. This Court should not waive these persons’ rights without their specific consent or at least an opportunity for them to be heard. Cf. Pansy, 23 F.3d at 780. This reason alone compels this Court to DENY the Globe a general right of public access to these materials. See Knoxville News-Sentinel, 723 F.2d at 476-78. This Court’s opinion neither prevents the Globe from viewing the list of impounded documents, included below, and then making a specific request for them; nor does it prevent from doing the same, any other person who may have more particularized rights than the Globe to the information contained in these privileged records. Cf. Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 475-76 (9th Cir.), cert. denied sub nom., International Ins. Co. v. Bridgestone/Firestone, Inc., 506 U.S. 868 (1992), citing Olympic Refining Co. v. Carter, 332 F.2d 260, 264-65 (9th Cir.), cert. denied, 379 U.S. 900 (1964) (discussing intervention by third parties with pending collateral litigation, to modify existing protective orders and gain limited access to discovery materials).
For the reasons set forth above, this Court hereby MODIFIES the impoundment orders in the underlying case to ALLOW the Globe access to certain of the trial exhibits currently held in the court records for the underlying case. Specifically, this Court ALLOWS the Globe access to the following trial exhibits: 4, 7, 9, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22. The court CONTINUES the impoundment order for 1-3, 5, 6, 8, 10, 18, and 21. Again, certain of these exhibits have been redacted to maintain the privileges surrounding those records. Envelope “B” also now includes Trial Exhibit 22, listed below. These items will be placed in an envelope designated with the letter “A.” Below is a complete list of the trial exhibits and other privileged records.
1. Doe’s Cambridge Hospital Records
2. Doe’s Waltham-Weston Hospital Records
3. Doe’s records from The Arbour (not admitted at trial)
4. Dr. Ross’s statement
5. Dr. Ross’s session notes
6. Dr. Ross’s letter
7. Affidavit of Dr. Ross
8. Cambridge Hospital psychological records for Doe
9. Doe’s wife’s recantation
10. Jane Doe’s medical records
11. The relevant Code of Massachusetts Regulations provisions
12. Insurance application
13. Insurance application
14. Letter from Addison Gilbert Hospital, concerning Doe’s appointment
15. Claims Procedures
16. Cambridge Hospital reappointment form
17. Insurance stipulation
18. Doe’s Schedule A from his federal tax returns for 1992
19. Insurance stipulation
20. Insurance stipulation 21. Application for temporary hospitalization
22. Deposition of Christina Paquette
ORDER
For the foregoing reasons, this court MODIFIES the impoundment orders in the underlying case no. 91-5581 to ALLOW the Globe, or any other member of the public, access to all court records and trial exhibits except those in envelopes marked “A” and “B.”
Finally, this Court also VACATES the impoundment order covering the docket number and court records for the current case, case no. 00-3790, except for the copy of Doe’s application for temporary hospitalization and an original brief that was redacted, both of which are to be placed in a sealed envelope marked “A,” and impounded.

Tufts Health Associates, The Arbour, Total Health Plan, and State Life Assurance Company of America have not entered appearances.

The Supreme Court in Nixon, 435 U.S. at 610, also addressed Warner Communications’ contention that release of the Watergate tapes was “required by the Sixth Amendment guarantee of a public trial.” This right may benefit Doe in a future criminal trial, cf. Newspapers of New England v. Clerk-Magistrate of the Ware Div. of the Dist. Court, 403 Mass. 628, 636 n. 10 (1988), cert. denied, 490 U.S. 1066 (1989), but the Globe cannot martial its support in accessing any records from the underlying civil case. In line with its later holding in Gannett Co. v. DePasquale, 443 U.S. 368, 379-88 (1979), the *507 Nixon Court declared that the Sixth Amendment “confers no special benefit on the press.” Nixon, 435 U.S. at 610.
As to the potential extent of protection offered by the Massachusetts Declaration of Rights in these situations, the Supreme Judicial Court has not yet held that any clause in that document offers any additional rights to the Globe in these circumstances. See Commonwealth v. Blondin, 324 Mass. 564, 570-71 (1949), cert. denied, 339 U.S. 984 (1950); Commonwealth v. Gilfedder, 321 Mass. 335, 343 (1947); see also Lyons v. Globe Newspaper Co., 415 Mass. 258, 267-69 (1993).