76                    462 Mass. 76 (2012)

New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business.

New England Internet Café, LLC, & others[1] vs. Clerk of
the Superior Court for Criminal Business in Suffolk
County & another.[2]

Suffolk. January 4, 2012. - April 25, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Search and Seizure,* Warrant, Affidavit. *Impoundment. Practice, Criminal,*
Warrant, Affidavit, Impoundment order. *Constitutional Law,* Search and
seizure, Impoundment order.

Discussion of the standard of review applicable to orders concerning impound-
ment of judicial records. [82-84]
In a civil action brought in Superior Court, in which the parties affected by
certain search warrants (plaintiffs) moved to modify or terminate an
impoundment order that had sealed the affidavits underlying those war-
rants, a previous order issued by the judge in the Superior Court who had
authorized the warrants, dismissing the plaintiffs' motion for access to the
materials underlying those warrants without prejudice to their filing of a
civil action, did not constitute a finding of good cause for the continuing
impoundment of those materials, where that judge took no action on the
merits of the motion for access, and where, in the ensuing civil action, the
judge could entertain the motion to modify or terminate the impoundment
order without the plaintiffs having to show changed circumstances or allow
for a sufficient passage of time [84-85]; further, the judge in the civil ac-
tion did not err in ruling on the motion on a short order of notice, where
both the plaintiffs and the Commonwealth were given an adequate op-
portunity to be heard, as well as ample notice of the possibility that a deci-
sion on the merits could be issued on an accelerated time frame, and where
the judge lifted the impoundment order in a limited fashion [85-87].
This court concluded that the Fourth Amendment to the United States Constitu-
tion does not require that the targets of government searches be given ac-
cess to the materials supporting them prior to indictment or require an
analysis separate from the recognized "good cause" standard, but the
privacy and property interests protected by the Fourth Amendment's con-
straint on unreasonable searches are not irrelevant to a judge's balancing of
the interests of the parties [87-93]; therefore, in a civil action brought in
Superior Court, in which the parties affected by certain search warrants
(plaintiffs) moved to modify or terminate an impoundment order that had
sealed the affidavits underlying those warrants, the judge did not abuse his
discretion in finding that the Commonwealth failed to establish good cause

[1]Ronald Sevigny, Leo Pelletier, Linda Pelletier, and Donald Greenidge.
[2]Attorney General.

462 Mass. 76 (2012)                                      77

New England Internet Café, LLC *v.* Clerk of the Superior Court for Criminal Business.

to maintain the impoundment order, where the judge properly balanced the Commonwealth's interest in preserving the secrecy of its ongoing investigation as described in the affidavits (which, while ordinarily compelling, was considerably diminished in the circumstances of the case) against the extent of the materials seized from the plaintiffs, the closure of their businesses, and the fact that they had not been charged with a crime nearly two and one-half months after the searches had been executed [93-95].

CIVIL ACTION commenced in the Superior Court Department on May 24, 2011.

An emergency motion to modify or terminate an impoundment order was heard by *D. Lloyd Macdonald*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Randall E. Ravitz*, Assistant Attorney General (*Thomas D. Ralph*, Assistant Attorney General, with him) for the defendants.

*Jeffrey J. Pyle* (*James W. Lawson* with him) for the plaintiffs.

CORDY, J. The clerk of the Superior Court for Criminal Business in Suffolk County and the Attorney General (together, Commonwealth) seek relief from an order of a Superior Court judge unsealing affidavits underlying seven search warrants executed against New England Internet Café, LLC; Ronald Sevigny; Leo Pelletier; Linda Pelletier; and Donald Greenidge (plaintiffs) during the course of a Statewide investigation into online gambling conducted at "Internet cafés." The materials had been sealed and impounded at the time the warrants were issued, and the plaintiffs had not been indicted either at the time they instituted this litigation to gain access to those materials or when the order unsealing the affidavits was issued.[3]

The plaintiffs initially sought access to the search warrant materials by filing a motion with the judge who had authorized the warrants. Relying on the procedure set forth in *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 227 n.14 (2004) (*Republican Co.*), the judge dismissed the motion "without prejudice" and directed the plaintiffs to file a civil action in the Superior Court. Thereafter, the plaintiffs filed the present action, and were granted relief when the Superior Court judge assigned to the case allowed their emergency motion to modify or terminate

---

[3]The plaintiffs have since been indicted. See note 8, *infra*.

the impoundment order, with particular reference to the plaintiffs' due process rights, and the rights guaranteed by the First, Fourth, and Sixth Amendments to the United States Constitution.

The Commonwealth sought review of this order in the Appeals Court, and we transferred the Commonwealth's appeal to this court on our own motion.

On appeal, the Commonwealth challenges the process through which the order lifting the impoundment was issued, as well as the judge's balancing of the respective interests of the parties in considering whether there was good cause to continue the impoundment. Of particular significance, the Commonwealth contends that the plaintiffs, whose properties were the targets of the search warrants, have no Fourth Amendment right of access to the affidavits supporting the warrants during the preindictment phase of an ongoing criminal investigation.[4] While we agree with the Commonwealth that the plaintiffs do not have a Fourth Amendment right per se to access such materials, we nonetheless conclude that interests protected by the Fourth Amendment are properly considered under the "good cause" standard for impounding judicial records, and that the judge did not abuse his discretion or commit any other error of law in weighing those interests in this case. As we see no merit in the Commonwealth's other arguments, we affirm.

*Background.* The genesis of this case lies in the Attorney General's well-publicized effort to curb the proliferation — and secure the regulation — of online gambling at Internet cafés. At these establishments, also called "cyber cafés," the proprietors sell customers timed access to computer terminals with, as the name suggests, Internet capabilities. They also may offer the opportunity to win prizes through "video slot machines" or similar computer games. While the proprietors contend that

_____

[4]The Commonwealth also contends that there is no preindictment right of access to search warrant affidavits under the First Amendment to the United States Constitution, that the relevance of the Sixth Amendment to the United States Constitution to the judge's determination is unclear, and that the plaintiffs do not have recourse in any due process guarantees. We agree with the first proposition, and also agree that, in the circumstances presented here, any interests protected by the Sixth Amendment may not be at issue. On the facts of this case, however, we decline to explore the relevance of any due process interests to the good cause analysis. See note 16, *infra.*

462 Mass. 76 (2012)    79

New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business.

such gaming involves legitimate sweepstakes offers, the Attorney General has stated her unequivocal position that it constitutes illegal gambling.[5]

1. *The search warrants.* In this context, State and local police officers sought search warrants for the premises and bank accounts of the plaintiffs, who operate certain Internet cafés in Fall River and Fairhaven that the Attorney General suspected were "fronts for illegal gaming." The warrants specifically referenced Massachusetts criminal statutes concerning illegal gaming, G. L. c. 271, §§ 1-7, and authorized the search of two commercial properties operated by New England Internet Café, a van registered to Leo Pelletier, and the records of accounts the plaintiffs maintained at four bank locations. On a motion of the Commonwealth at the time the warrants were sought, the judge contemporaneously sealed and impounded each warrant, as well as its accompanying application and affidavit, and any prospective return. See G. L. c. 276, § 3A.

The warrants were lawfully executed on or about March 31, 2011. Pursuant to these warrants, State and local police officers seized computers and related equipment, records, and other miscellaneous items from the plaintiffs' commercial properties, and caused the freezing of at least six different bank accounts, with balances totaling approximately $109,000. According to the plaintiffs, these actions resulted in the "indefinite shutdown" of their Internet cafés.

The plaintiffs were provided with copies of the warrants; however, the warrant applications, affidavits, and subsequent returns remained under seal. Several weeks later, when no indictments had been forthcoming, the plaintiffs filed a stand-alone motion in the first criminal session of the Suffolk Superior

---

[5]The week after the search warrants were executed, the Attorney General announced the release of emergency regulations banning illegal gaming at Internet cafés. A permanent regulation to that effect was adopted in July, 2011, under the authority granted to the Attorney General by G. L. c. 93A, § 2 (c). See 940 Code Mass. Regs. §§ 30, 30.04(2) (2011) ("With respect to a business or a transaction that involves or purports to involve both a chance to win a prize and the sale or purported sale of a good or service, it is an unfair and deceptive act or practice in violation of [] G. L. c. 93A, § 2 [a] for any person to engage in a business or engage in a transaction where a gambling purpose predominates over the bona fide sale of bona fide goods or services").

Court, requesting access to the impounded warrant materials. The motion was referred to the judge who had authorized the warrants. She conducted a hearing with the parties, received legal memoranda from them, and reviewed in camera an affidavit submitted by an assistant attorney general involved in the case, which detailed the alleged need for continued impoundment.

In an order issued on May 13, 2011, the judge explained that, while the "[m]ovants' presentation is persuasive," and she initially had indicated she would hear and decide the motion, she had since concluded that "such a course was unwise" in light of our ruling in *Republican Co.*, *supra* at 227 n.14. As the judge explained, that case instructs nonparties seeking relief from an order of impoundment, where there are no ongoing proceedings, to initiate a civil action in the court that issued the order. Because the plaintiffs (then the "movants") did not follow this procedure, the judge took "no action" on the merits of the motion and dismissed it *"without prejudice* to filing a civil action in [the Superior Court]" (emphasis in original). Near the end of the order, the judge briefly posited that the Commonwealth had "established good cause under the First Amendment to maintain the impoundment order previously entered."

2. *The plaintiffs' civil action.* On May 24, 2011, the plaintiffs filed the civil action contemplated in the judge's order, naming as defendants the clerk of the Superior Court for criminal business in Suffolk County and the Attorney General. Along with their complaint, the plaintiffs filed an emergency motion to modify or terminate the impoundment order and a motion for short order of notice. The plaintiffs requested, and were granted, a hearing date of June 3, 2011.

The Commonwealth opposed the plaintiffs' emergency motion and moved to continue the hearing, arguing that the plaintiffs sought "a form of relief that [the] [c]ourt found unwarranted just eleven days before [the] action was commenced." It further asserted that "[t]here is no sufficient justification for the [p]laintiffs to have this renewed request for relief from impoundment heard in the time frame they seek," and asked the judge for a "full and fair opportunity . . . to prepare [a] motion to dismiss." The judge assigned to the civil action (who was not

the judge who had authorized the warrants and impounded the materials) denied the Commonwealth's motion to continue the hearing, ruling that "[i]f further time is needed for the [c]ourt to be adequately briefed on the matters at issue, that can be determined at the June 3rd hearing."

The hearing proceeded as scheduled. After providing an opportunity for both parties to speak, the judge requested that the Commonwealth provide him with a copy of the impounded warrant materials, the affidavit from the assistant attorney general regarding the need for impoundment, and any supplemental affidavits the Commonwealth wished to submit. He explained that he would review these materials and "then . . . make either a decision on the merits or a procedural order for further hearing." This ruling was memorialized in a procedural order entered on the day of the hearing and subsequently provided to both parties.

Three days later, the Commonwealth provided the judge with the documents he had requested, but did not include any affidavits beyond those underlying the search warrants and the affidavit previously submitted by the assistant attorney general.[6]

On June 23, 2011, the judge granted the plaintiffs' emergency motion. In his ruling, the judge reasoned that any interests the plaintiffs derived from the First, Fourth, and Sixth Amendments, as well as their State-based equivalents, were a "necessary" part of the "good cause" analysis because "inherent in [that] rule-mandated process is a consideration of 'the nature of the parties and the controversy, the type of information and the privacy interests involved.' " He then identified the specific interests to be balanced in the case as the Commonwealth's ordinarily "compelling interest to maintain the secrecy of the evidence derived in its criminal investigations during the pre-indictment period" and the plaintiffs' "compelling Fourth Amendment and [F]ederal and [S]tate-based due process interests [in] their property [having] been seized and their businesses [having] been shut down without [their] having been charged with a crime."

---

[6]On June 15, the Commonwealth served a motion to dismiss the complaint on the plaintiffs pursuant to Rule 9A of the Rules of the Superior Court, and so informed the court through a notice filed the next day. The Commonwealth did not file its motion to dismiss with the court until July 5.

Importantly, when balancing these interests, the judge expressed his view that "the contents of the [impounded] affidavits are unexceptional." As the judge explained, they "record the presence and observations of two undercover investigators on the plaintiffs' premises," which were "open to the public and engaged in a brisk business." To the judge, then, "anything described in the affidavits could have been (or could be) independently obtained from interviews of the cafes' former patrons," as "the scenes depicted . . . are absent secretive or otherwise unusual activities."

Finally, the judge "attache[d] significance to the fact that shortly after the execution of the search warrants, the Attorney General chose to promulgate regulations pursuant to its authority under G. L. c. 93A to 'mak[e] clear that such gambling operations at "cyber cafes" . . . are illegal.' " He drew from this statement, which was made in a press release, the inference that "beforehand there was a plausible doubt as to that proposition."

By way of relief, the judge granted "so much of the motion as seeks the release [only] of the affidavits," and invited the Attorney General "to propose that specific portions of the affidavits be redacted before release to the plaintiffs."[7] He initially stayed his order pending appellate review of the matter, but lifted the stay, at the plaintiffs' request, in October, 2011. Before the order lifting the stay took effect, however, the Appeals Court issued a stay of the June 23 order pending resolution of the appeal.[8]

*Standard of review.* "Massachusetts has long recognized a common-law right of access to judicial records." *Republican*

[7]The Commonwealth did not thereafter propose any redactions.

[8]On October 27, 2011 (while the Commonwealth's appeal was pending in the Appeals Court), the plaintiffs were indicted under several sections of G. L. c. 271. Prior to the transfer of the case to this court, the Appeals Court instructed the Commonwealth to provide counsel for the plaintiffs with the impounded and sealed materials (i.e., the warrant applications, affidavits, and returns). The Appeals Court, however, did not lift the impoundment order. As such, the plaintiffs remain bound by its terms and may share the relevant materials only with a limited class of persons. The matter, then, remains properly before us. Cf. *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't,* 403 Mass. 628, 629 n.4 (1988), cert. denied, 490 U.S. 1066 (1989) (*Newspapers of New England*) (reviewing continued impoundment of search warrant affidavit even where target of search convicted and took no position on subsequent disclosure of affidavit).

*Co., supra* at 222, citing *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 604 (2000) (*Boston Herald, Inc.*), and *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 546 (1977). See *Globe Newspaper Co., petitioner*, 461 Mass. 113, 120 (2011). As a result, most judicial records — including transcripts, evidence, memoranda, court orders and, significantly, material relating to the issuance of search warrants (after the warrant is returned) — are presumptively public documents. *Republican Co., supra* at 222-223, citing *Boston Herald, Inc., supra* at 604, and *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 631-632, 637 (1988), cert. denied, 490 U.S. 1066 (1989) (*Newspapers of New England*).

This presumption of publicity of judicial records, however, is not absolute, and may be restricted on a showing of "good cause." *Republican Co., supra* at 223, and cases cited. See *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 332 (1987). "To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case," *Boston Herald, Inc., supra* at 604, and "take into account all relevant factors, 'including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request.' " *Id.* at 604 n.22, quoting Rule 7 of the Uniform Rules on Impoundment Procedure (West 2000). "If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment." *Boston Herald, Inc., supra* at 605, citing *Newspapers of New England, supra* at 638. This presumption and balancing process govern both the initial decision to impound and later requests to modify or terminate an impoundment order. *Republican Co., supra* at 224-225 (impoundment order has "no continuing presumption of validity"). In either instance, the party urging impoundment (or continued impoundment) bears the burden of "demonstrating the existence of good cause." *Id.* at 225.

We review orders concerning impoundment for abuse of discretion or other error of law. *Id.* at 226 ("Superior Court judge applied the correct legal standard and did not abuse his dis-

cretion in finding that good cause for impoundment [of search warrant materials] no longer existed"). Cf. *Boston Herald, Inc.,* *supra* at 600-601 (referencing Rule 12 of Uniform Rules on Impoundment Procedure and applying abuse of discretion or clear legal error standard for orders modifying or terminating impoundment orders in civil proceedings).

*Discussion.* We address first the Commonwealth's various procedural arguments and then its substantive claims.

1. *Effect of the May 13 order.* The Commonwealth places great emphasis on the May 13 order, in which the judge who had authorized the warrants dismissed the plaintiffs' motion for access to the underlying materials without prejudice to their filing a civil action, and yet acknowledged the existence of "good cause" for maintaining the impoundment order. To the Commonwealth, this latter comment was a valid finding of good cause, such that the plaintiffs could not renew their challenge to the impoundment order until a significant time had passed or changed circumstances could be shown. We disagree.

As a plain reading of the May 13 order reveals, the judge took "no action" on the merits of the plaintiffs' motion: she merely outlined the procedure set forth in *Republican Co., supra* at 227 n.14, instructed the plaintiffs to follow it, and "dismiss[ed] their motion *without prejudice*" (emphasis in original), so that they could do so. In stating her view at the very end of the order that the Commonwealth had shown "good cause" to maintain the impoundment order, the judge presumably was referring to maintaining the impoundment until such time as a procedurally proper challenge was brought, and the "persuasive" arguments made by the movants were reviewed on their merits.

In any event, the Commonwealth is incorrect in asserting that the plaintiffs were required to show changed circumstances or allow for a longer passage of time before the judge in the civil action could entertain the motion to modify or terminate the impoundment order. Impoundment orders are interlocutory, and have no continuing presumption of validity. *Republican Co., supra* at 223-224. As such, a party seeking to modify or terminate such an order need only come forward "with a nonfrivolous reason to do so," *id.* at 225, and "does *not* bear the burden of demonstrating either that there has been a material change in

circumstances or that whatever good cause may once have justified . . . impoundment no longer exists" (emphasis added). *Id.* at 224-225. While this rule may raise the concern that "a party who has secured impoundment on Monday afternoon should not have to return to court on Tuesday morning to make the same case once again," we have expressed our confidence in the ability of judges to separate such "frivolous, repetitive, or harassing motions" from those worthy of review. *Id.* at 225.

Here, both judges appropriately recognized that the plaintiffs' claims were not frivolous: the first by describing them as "persuasive" and suggesting that they posed "important litigation of constitutional dimension," and the second by granting their emergency motion to modify the impoundment order. Given these circumstances, the relatively brief period of time between these two decisions is of no consequence.

2. *Process employed in the civil action.* The Commonwealth next objects to the process used by the judge in ruling on the plaintiffs' motion and issuing the June 23 order unsealing the warrant affidavits. According to the Commonwealth, the order is procedurally deficient because it was, in effect, a preliminary injunction that granted the ultimate relief sought without providing the Commonwealth adequate notice of or an opportunity to respond to a possible decision on the merits, and without requiring the plaintiffs to support their allegations through evidence or affidavit. We find these arguments unpersuasive.

The decision to impound is "always the exception to the rule [of publicity]," *Republican Co., supra* at 223, and must be born of the particular facts and circumstances of a given case. *Newspapers of New England, supra* at 638 (Wilkins, J., concurring) ("judge confronted with a motion to impound or to lift an impoundment order must consider and decide the case on its particular facts"). Impoundment proceedings — whether aimed at the cloistering of records or their release — are sui generis in nature. They, like the very balancing test employed to determine whether initial or continued impoundment is proper, must take shape around the facts at hand and respond to the unique needs of the parties. As a result, we have never saddled judges with a

rigid process for reviewing impoundment orders,[9] but rather freed them to expedite the process as needed and to employ "useful steps out of the normal course." *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1977).

Judges enjoy a similar flexibility in crafting remedies appropriate to the parties' particular interests and needs. Among other options, a judge may release the materials to the public, or only to the moving party with or without a confidentiality order, or release the materials to either with redactions appropriate to protect the legitimate interests of the parties in investigative secrecy, privacy, property, or fair trial. See *Boston Herald, Inc.*, *supra* at 605, citing *Newspapers of New England*, *supra* at 638 (Wilkins, J., concurring).

Given the malleable nature of impoundment proceedings, the judge treated the plaintiffs' motion appropriately. The continued impoundment of the search warrant materials was the only issue presented to the judge, and it had been fully briefed and argued by the parties mere weeks before the plaintiffs brought it before the court in the civil action. No doubt aware of this history, the

---

[9] "Although we have indicated that the uniform rules [on impoundment procedure] are highly instructive outside of the civil sphere to which they expressly apply, . . . we have not stated that they are binding" on impoundment orders entered in criminal proceedings. *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 227 n.14 (2004) (*Republican Co.*). This tenet generally attaches to criminal impoundment orders brought into the civil context under *Republican Co.*, as well. *Id.* ("Practice regarding orders of impoundment entered in criminal proceedings should hew as closely as possible to the protocol described by the uniform rules").

In any event, the uniform rules focus on *issuing*, not lifting, an impoundment order, and the main objection the Commonwealth might make under those rules would be the absence of affidavits to support the plaintiffs' motion to modify or terminate the impoundment order — here, based on the plaintiffs' contention that the execution of the warrants put them out of business. See Rule 10 of the Uniform Rules on Impoundment Procedure (LexisNexis 2011). But we have previously concluded that a judge, when faced with impounded records from a criminal proceeding, may dispense with this requirement. *Republican Co.*, *supra* at 225 n.11. In the present case, the Commonwealth did not rebut the plaintiffs' factual allegations and, as the Commonwealth conceded at oral argument, the plaintiffs' commercial properties were, in fact, closed due to the seizures authorized by the search warrants. While the "judge would have been acting within his discretion if he had required [the plaintiffs] to set forth their reasons for modification in an affidavit . . . in the apparent circumstances of the case, the judge could have concluded that none was necessary." *Id.*

judge agreed to hear the plaintiffs' emergency motion on a short order of notice. After allowing both parties to argue their positions at the hearing, the judge invited the Commonwealth to submit additional materials and stated that, after reviewing those submissions, he would "make either a decision *on the merits* or a procedural order for further hearing" (emphasis added). He reiterated this stance in a subsequent order. The Commonwealth neither objected to this course of action nor submitted any supplemental materials (as it was invited to do) beyond the search warrant materials and the affidavit prepared by the assistant attorney general. In these circumstances, both parties were given an adequate opportunity to be heard, as well as ample notice of the possibility that a decision on the merits could be issued on an accelerated time frame. Moreover, the judge lifted the impoundment order in a limited fashion; he unsealed only the search warrant affidavits and requested that the Commonwealth propose redactions to it. There was no procedural error.

3. *Good cause.* Finally, the Commonwealth contends that the judge erred in finding that it failed to establish good cause to maintain the impoundment order. Specifically, the Commonwealth argues that the judge both overlooked critical information in the affidavits that supported a finding of good cause and, in balancing the interests of the parties, attributed to the plaintiffs various constitutional rights and interests grounded in the First, Fourth, and Sixth Amendments, as well as due process rights, that do not — or should not — exist during the preindictment period of an ongoing criminal investigation.[10] The plaintiffs, for their part, indorse the judge's conclusion that the Commonwealth did not establish good cause, and urge this court to recognize

---

[10]The Commonwealth also argues that the judge should not have considered the Attorney General's decision to promulgate regulations banning online gambling at Internet cafés shortly after the search warrants were executed against the plaintiffs' properties. While the surrounding legal and regulatory environment may be pertinent to the good cause analysis, see *Boston Herald, Inc., supra* at 604 n.22 (good cause analysis includes "the nature of the parties and the controversy"), we need not decide the issue here. The Attorney General's actions were not dispositive of the matter, and the judge's conclusion that the Commonwealth failed to establish good cause to maintain the impoundment order stands without any reference to the then recently enacted regulations.

that, as targets of the search, they have a Fourth Amendment right to access the search warrant materials before indictment.

We focus on the plaintiffs' assertion of a Fourth Amendment right of access to the search warrant affidavits, which was the central dispute between the parties below.[11] To support this proposition, the plaintiffs reference various published and unpublished Federal opinions. See, e.g., *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 586-591 (D. Md. 2004) (Fourth Amendment right to examine affidavit in support of search warrant once warrant was executed, absent demonstration by government of compelling interests); United States *vs.* Oliver, U.S. Ct. App., No. 99-4231 (4th Cir. Mar. 9, 2000); *Matter of Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996); *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995). See also Matter of the Search of the Offices & Storage Areas Utilized by Stephen P. Amato, D.C., U.S. Dist. Ct., No. 05-MJ-05-B (D. Me. April 14, 2005) (District Court judge "satisfied that the First Circuit would recognize, in a target property owner, a post-search, pre-indictment Fourth Amendment right to inspect the underlying search warrant affidavit"). But see *Matter of Eyecare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) (rejecting search target's Fourth Amendment argument partly because "[t]he Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to the affidavits employed to support them" [emphasis in original]). According to the plaintiffs, and the opinions to which they cite, the Fourth Amendment protection against " 'unreasonable' intrusion" and its "specific requirement that search warrants be supported by probable cause" imply a postexecution, preindictment "right to challenge both the reasonableness of the search and the degree to which the warrant was supported by probable cause." *In re Search Warrants Issued on April 26, 2004, supra* at 588. See *In re Search Warrants Issued August 29, 1994, supra* at 299. To give meaning

---

[11]Although the judge included the interests protected by the plaintiffs' First and Sixth Amendment rights in his "good cause" analysis, the plaintiffs did not explicitly ground their arguments below in those amendments, nor do the plaintiffs attempt on appeal to defend the judge's inclusion of them.

to that right, "a person whose property has been seized pursuant to a search warrant has a right . . . to inspect and copy the affidavit upon which the warrant was issued," as a means to "challenge the lawfulness of that search." *Matter of Up North Plastics, Inc., supra* at 232-233. See *In re Search Warrants Issued on April 26, 2004, supra* at 590 ("While the government is free to lawfully exercise its power to execute search warrants, the persons against whom that awesome power is unleashed at least have the right to discover the basis for the exercise").

Even where recognized, however, courts uniformly have qualified a search target's right of access, such that the government may block disclosure of a warrant affidavit on showing "(1) that a compelling governmental interest requires the materials to be kept under seal and (2) there is no less restrictive means, such as redaction, available." *In re Search Warrants Issued August 29, 1994, supra* at 299. See *In re Search Warrants Issued on April 26, 2004, supra* at 591, citing United States *vs.* Oliver, U.S. Ct. App., No. 99-4231, *supra*; *Matter of Up North Plastics, Inc., supra*. Regardless, the plaintiffs urge us to acknowledge a right of access grounded in the Fourth Amendment, because they view the "good cause" standard, which largely was developed in response to media requests for disclosure of impounded documents, as inadequate to protect the interests of the target of a search. We disagree.

The plaintiffs' description of the origins of the "good cause" analysis is accurate: it evolved as a mechanism to address efforts by media organizations to gain access to impounded court materials. See, e.g., *Republican Co., supra* at 219-220; *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 327 (1987); *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 540 (1977). Consequently, none of our prior cases, steeped in disputes between media outlets and the government, addresses precisely the question before us. That does not mean, however, that our current jurisprudence regarding impoundment cannot adequately embrace the present dispute.

First, the basic premise underlying the analysis of any request to impound public court documents (which the documents underlying a search warrant become once the warrant is executed

and the return is filed),[12] is the "general principle of publicity." *Newspapers of New England, supra* at 631, quoting *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 546. Cf. *Globe Newspaper Co., petitioner,* 461 Mass. 113, 123 (2011) (imposing common-law rule that "inquest report shall be impounded until the transcript presumptively becomes a public document under G. L. c. 38, § 10"). This principle extends a presumptive right of access to all of society, not merely members of the press,[13] and it is through this lens that judges consider all impoundment matters. See *Republican Co., supra* at 222, quoting *Matter of Application & Affidavit for a Search Warrant,* 923 F.2d 324, 331 (4th Cir.), cert. denied sub nom. *Hughes* v. *Washington Post Co.,* 500 U.S. 944 (1991) ("With regard specifically to material relating to the issuance of search warrants, '[s]ociety has an understandable interest . . . in law enforcement systems and how well they work[, and has] legitimate concerns about methods and techniques of police investigation' ").

Similar to the Fourth Amendment right of access recognized by some courts, this presumptive right is not absolute. We have placed on it the qualification that a judge may seal documents on a showing of "good cause" from the party urging impoundment or continued impoundment. *Republican Co., supra* at 223, citing *Boston Herald, Inc., supra* at 604. "The exercise of the power to restrict access, however, must recognize that impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be 'strictly construed in favor of the general principle of publicity.' " *Republican Co.,*

---

[12]General Laws c. 276, § 2B, provides that "[u]pon the return of [a search] warrant, the [supporting] affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned." See *Newspapers of New England, supra* at 631.

[13]In *Newspapers of New England, supra* at 636-637, we invoked the common law and statute to apply this presumptive right of access to search warrant affidavits, and explicitly rejected the argument that the First Amendment afforded the public such a right. Thus, even though the case before us pertains to the target of a search — and not the public — it appears that both judges were mistaken in including that Amendment within their "good cause" analyses. We need not decide the issue here, however; given the existence of a presumptive right of access grounded in another source and the other bases for lifting the impoundment order, any error with regard to the First Amendment was immaterial.

*supra*, citing *Commonwealth* v. *Blondin*, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950). In light of this admonition, judges must carefully "balance the rights of the parties based on the particular facts of each case," "take into account all relevant facts," and "tailor the scope of the impoundment order so that it does not exceed the need for impoundment." *Boston Herald, Inc., supra* at 604 & n.22, 605. The relevant analysis, therefore, takes into account essentially the same factors as the Fourth Amendment standard espoused by the plaintiffs: the competing rights and interests of the parties and alternatives to impoundment. Cf. *id* at 605 n.24, citing *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 14-15 (1986) (finding "good cause" analysis akin to "three-pronged test [established by the United States Supreme Court] to determine whether an order of closure comports with the constitutional presumption of access to criminal proceedings and records" under First Amendment).

The plaintiffs contend, however, that "at least in some cases, '[t]he *public*'s interest in accessing court records and proceedings often runs counter to, and often must be balanced against, the interests of a criminal defendant (or the subject of a criminal investigation)' " (emphasis added). *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 590 (D. Md. 2004). We do not disagree. For example, a prospective defendant's right to a fair trial, and a jury unimpaired by pretrial publicity, may be in conflict with the public interest in an ongoing investigation.[14] Contrast *Newspapers of New England, supra* at 632-633, 637-638 (suspect's Sixth Amendment right to fair trial infringed by disclosure of search warrant affidavits pertaining to murder investigation where disclosure was sought before

[14]We typically consider the right to a fair trial and an unimpaired jury in the context of a media intervener's attempt to gain access to impounded materials, see, e.g., *Newspapers of New England, supra* at 632-633, 637-638; *Boston Herald, Inc., supra* at 608-611, not where a likely defendant moves the court to lift an impoundment order on documents relevant to his own case. The desire to ensure a fair trial, however, may be relevant in both circumstances. *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 378 (1979) ("adverse publicity can endanger the ability of a defendant to receive a fair trial"). Thus, although the judge did not fully explicate the relevance of the Sixth Amendment to the facts at hand — and the plaintiffs do not attempt to do so on appeal — the passing reference to that Amendment in the June 23 order was not reversible error.

suspect was indicted or subject to any criminal proceedings), with *Boston Herald, Inc., supra* at 608-610 (Sixth Amendment right to fair trial did not require impoundment of affidavits filed in support of domestic abuse prevention order where "pervasive media reports" of physical and verbal abuse already existed). However, the "good cause" analysis is sufficiently flexible to and may properly take into account such concerns, see *Newspapers of New England, supra* at 632 ("in this case the judge was not balancing [under the good cause analysis] the competing interests of publicity against privacy but rather balancing publicity against a defendant's right guaranteed by the Sixth Amendment . . . to a fair trial"); *Boston Herald, Inc., supra* at 608 (describing factors judge may consider when balancing, under good cause analysis, "the public's right to inspect documents against a defendant's rights guaranteed by the Sixth Amendment to a fair trial"), just as it is sufficiently flexible to and may readily take into account the particular interests of the parties in the case before us. See *Globe Newspaper Co., petitioner, supra* at 122 (" 'good cause shown' standard reflects our recognition that a ruling regarding impoundment requires a judge to consider and balance the relevant factors that apply to a particular case").

Given the nature of the "good cause" standard, we conclude that a separate analysis under the Fourth Amendment is unnecessary. Cf. *Commonwealth* v. *Silva*, 448 Mass. 701, 707 (2007) (separate analysis under First Amendment unnecessary where good cause was established to impound jurors' names and addresses after verdict). A judge may consider, within the confines of our current standard, one party's status as the subject of the search, and "of necessity treat[] the relevant constitutional [and other] considerations." *Id.* Such considerations may include those derived from Fourth Amendment protections against "unreasonable searches and seizures," such as the "right to challenge both the reasonableness of the search and the degree to which the warrant was supported by probable cause," *In re Search Warrants Issued on April 26, 2004, supra* at 588, as well as other germane concerns, such as the extent and impact of any resulting seizure, the status of the investigation in furtherance of which the warrants were issued, and the length of time

that has passed since their execution. See *id.* at 591 (recognizing right of search target to access warrant materials, which had been impounded for nearly eight months, partly due to risk that "an indictment in the case may not be issued for a considerable period of time[; a] delay of several years is not uncommon in such investigations"). While ordinarily those concerns would likely be offset by the compelling government interests in the confidentiality of its ongoing investigations, that does not make them irrelevant.

In sum, we do not agree with the plaintiffs that the Fourth Amendment requires that the target of government searches be given access to the materials supporting them prior to indictment or that an analysis separate from our recognized "good cause" analysis is required whenever a Fourth Amendment interest is asserted. On the other hand, we do not agree with the Commonwealth that the privacy and property interests protected by the Fourth Amendment's constraint on unreasonable searches are irrelevant to a judge's balancing of the interests of the parties in the circumstances presented here.

With this in mind, we turn to the manner in which the judge balanced the respective interests of the parties before us. After reviewing both the warrant affidavits and the assistant attorney general's affidavit on good cause, the judge concluded that "the contents of the affidavits are unexceptional." As he explained, and we so conclude after our own review of the impounded materials, the affidavits portray a generic gaming experience at a public place of business; they are innocuous and do not expose any secretive investigative techniques or clandestine operations. In light of the judge's findings, and the opportunity he properly extended to the Commonwealth to suggest the redaction of information that it believed was particularly sensitive, the Commonwealth's interest in preserving the secrecy of its ongoing investigation as described in the affidavits, while ordinarily compelling, was considerably diminished. See *In re Search Warrants Issued August 29, 1994*, 353 F. Supp. 2d 296, 302 (S.D. Ohio 1995) ("redaction of the original affidavit is feasible and would meet the government's concerns regarding any ongoing criminal investigation"). Contrary to the Commonwealth's contention that the judge overlooked critical information pertinent

94                                            462 Mass. 76 (2012)

New England Internet Café, LLC *v.* Clerk of the Superior Court for Criminal Business.

to the good cause analysis, his acknowledgment of potentially sensitive information worthy of redaction reflects an appreciation of the Commonwealth's purported needs, as well as his conclusion that the Commonwealth had failed to demonstrate good cause to shield the documents in their entirety.

On the other side of the scale, the judge properly considered the extent of the materials seized from the plaintiffs, the closure of the plaintiffs' businesses, and the fact that, nearly two and one-half months after the searches had been executed, the plaintiffs had not yet been charged with a crime.[15] There was no abuse of discretion.[16] The judge's order allowing the plaintiffs'

---

[15]We do not question the propriety of the original impoundment order entered at the time the search warrants issued.

[16]In addition to Fourth Amendment interests, the judge alluded to (but did not expand on) the plaintiffs' due process interests in the seizure of their property and the closing of their businesses. The Commonwealth contends that under the *"Parratt-Hudson"* doctrine, the plaintiffs would be free to move for suppression of the evidence and for the return of their property if and when they were indicted, and therefore there is no due process interest at stake. See *Parratt* v. *Taylor*, 451 U.S. 527, 536-543 (1981), overruled in part on other grounds, *Daniels* v. *Williams*, 474 U.S. 327 (1986), quoting *Mitchell* v. *W.T. Grant Co.*, 416 U.S. 600, 611 (1974) ("Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate"); *Hudson* v. *Palmer*, 468 U.S. 517, 519, 530-537 (1984). See also G. L. c. 276, § 3; Rule 61 of the Rules of the Superior Court. The plaintiffs contend that this doctrine is inapplicable to their Fourth Amendment claim, and that it pertains only to " 'random and unauthorized' conduct by [S]tate officials." See *Chmielinski* v. *Massachusetts Office of the Comm'r of Probation*, 484 F. Supp. 2d 201, 203 (D. Mass. 2007), aff'd sub nom. *Chmielinski* v. *Massachusetts*, 513 F.3d 309 (1st Cir. 2008).

Most courts confronted with claims such as those before us analyze the Fourth Amendment exclusively. The few that do refer to due process rights and interests under the Fifth Amendment to the United States Constitution either make a cursory reference to them, *Matter of the Search of Search of Wag-Aero Inc.*, 796 F. Supp. 394, 395 (E.D. Wis. 1992) (unsealing search warrant materials after balancing search target's "due process rights flowing from nondisclosure" against government's interest where documents and aircraft parts seized and search warrant materials sealed for six months after seizure), or focus on the procedural elements underlying the search warrant itself. Al-Dahir *vs.* Northrop Grumman Info. Tech., U.S. Dist. Ct., Civil Action No. 08-563 (E.D. La. Sept. 26, 2008) (maintaining impoundment of search warrant materials where search target's property remained in government custody for approximately two years without indictment being issued because probable cause and execution of warrant "more than satisfy the requirement of due process"). See also *Matter of Eyecare Physicians of Am.*, 100 F.3d 514, 516-

emergency motion to modify or terminate the impoundment order is affirmed.

*So ordered.*

---

517 (7th Cir. 1996) (due process not implicated where search targets provided copies of requested documents).

While in the circumstances of this case we see no reason to explore the relevance of the constitutional right to due process within the "good cause" analysis, we do not mean to suggest that due process interests may never be relevant to such an inquiry. In the extreme case, prolonged and unjustifiable delay in bringing an indictment against the target of a search, whose business must close as a result of the seizure of otherwise legally possessed property, may trigger constitutional due process concerns.