**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| JOHN J. DOUGHERTY, | : | No. 6 EAP 2015 |
| | : | |
| Appellant | : | Appeal from the Judgment of the |
| | : | Superior Court entered on 8/14/14 at |
| v. | : | No. 1333 ESA 2012 affirming the order |
| | : | entered on 4/11/12 in the Court of |
| KAREN HELLER, | : | Common Pleas, Civil Division, |
| | : | Philadelphia County at No. 00699 |
| Appellee | : | December Term 2009 |
| | : | |
| | : | ARGUED: May 9, 2016 |

## CONCURRING AND DISSENTING OPINION

**SENIOR JUDGE COLINS**                    **DECIDED: June 14, 2016**

I join in parts I, II, and III, and respectfully dissent from part IV of the scholarly majority opinion. I conclude, as does Judge Brobson in his dissent, that this Court should decide the two issues that were accepted for appellate review in the February 4, 2015 Order granting allocatur. Due to the importance of these issues as well as the First Amendment rights implicated by the questions presented, I would hold that these issues are "too important to be denied review" under the collateral order doctrine. *See Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d 1121, 1124 (Pa. 2009). Furthermore, on the merits, I agree with the dissent from the Superior Court's *en banc* decision, *Dougherty v. Heller*, 97 A.3d 1257, 1268 (Pa. Super. 2014), authored by Judge Mundy and joined by President Judge Emeritus Ford Elliot. The Trial Court abused its discretion by denying the limited relief sought; accordingly, I would reverse on the merits.

Pennsylvania Rule of Civil Procedure 4012(a) governs the issuance of protective orders and provides, in relevant part, that

> [u]pon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense.

Pa. R.C.P. No. 4012(a). Use of the "good cause" standard to evaluate whether a court should issue a protective order is near universal among our sister states and the standard is likewise applied in the federal courts in accordance with Federal Rule of Civil Procedure 26(c). Fed R. Civ. P. 26(c). John J. Dougherty (Appellant) and Karen Heller (Appellee) have each offered an abundance of precedent applying the "good cause" standard from myriad jurisdictions to support their respective arguments for and against a protective order. Among the United States Courts of Appeals alone there are varying tests and conflicting views on what constitutes "good cause" and the factors that should be considered in making the determination to issue a protective order. *See, e.g., Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001); *U.S. v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994).

Unifying these differing applications of the "good cause" standard is the absence of bright lines. The standard exists on a continuum, from pre-trial to post-trial, with each stage of the litigation raising competing interests and incongruent concerns. Prior to trial, the public has no right of access to discovery materials. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Yet, once that material is filed in support of a dispositive motion or as a part of a party's case in chief, it is fundamental to the public's

2

right of access to the courts that the evidence is open to view.  Pa. Const., Art. I, §§ 7, 11; *see also* U.S. Const. Amends. I, XIV.[1]

---

[1] Section 7 of Article I of the Pennsylvania Constitution provides, in relevant part:

> The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Pa. Const., Art. I, § 7.  Section 11 of Article of the Pennsylvania Constitution provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const., Art. I, § 11.  The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.  The Fourteenth Amendment to the United States Constitution further provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV.

The standard is fact-intensive: a factor that is determinative in one instance may be entirely irrelevant in another. A deposition given in a defamation action may implicate personal privacy rights, but it does not ordinarily lead to the disclosure of trade secrets. Similarly, disclosure of documents produced in litigation arising from tainted ground water may be necessary to protect the public health, safety and welfare while such concerns would ordinarily have no place in evaluating whether a protective order is warranted to seal from public view documents produced in litigation arising from a boundary dispute between neighbors.

A protective order is mutable; the circumstances necessitating a protective order to prevent information from being disseminated for non-litigation purposes prior to trial may no longer exist once trial has commenced or the litigation has been resolved.[2] Likewise, a party that seeks to intervene in litigation to have information subject to a protective order made public may change the dynamics of the court's "good cause" analysis and result in rescission of the protective order.[3] Moreover, a court may not find

---

[2] *See, e.g. Baxter International, Inc. v. Abbot Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002) ("Secrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.") (internal citations omitted); *see also Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 970 A.2d 656, 677, 684, 693 (Conn. 2009) (*Rosado II)* (granting in part request to vacate sealing order shielding majority of documents filed in cases that had been settled and withdrawn, which had alleged clergy sexual abuse of minors); *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 884 A.2d 981, 1008 (Conn. 2005) (*Rosado I*); *S.E.C. v. TheStreet.Com,* 273 F.3d 222, 227, 233-234 (2d Cir. 2001) (permitting media intervenor access to depositions previously sealed); *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533-535 (1st Cir. 1993) (modifying protective order following settlement); *Felling v. Knight,* 211 F.R.D. 552, 555 (S.D. Ind. 2003) (vacating protective order barring release of video tape depositions following settlement).

[3] *See, e.g., Rosado II; Rosado I; Republican Co. v. Appeals Court,* 812 N.E.2d 887, 894-895 (Mass. 2004) (upon petition by civil plaintiff and newspaper, the court employed a "good cause" analysis to vacate an impoundment order, which had prevented disclosure of material submitted in support of a search warrant eleven years

good cause where a party seeks a blanket order to shield all information gleaned during discovery from view or possible dissemination, but find "good cause" where protection is sought for a narrow subset of documents, such as personal identifying information of non-parties.[4]

In the instant matter, the relief sought by Appellant before the Court of Common Pleas of Philadelphia County (Trial Court) was narrow in scope; Appellant did not seek to place under seal the contents of the testimony given at his deposition; rather, he sought merely to prevent the visual record from being disseminated prior to trial for non-litigation purposes.

The column at the heart of this matter as written and published by Appellee was egregiously false. (November 28, 2009 *Philadelphia Inquirer* Article by

---

prior for a priest alleged to have committed sexual abuse of children within his ministry); *Kamakana*, 447 F.3d at 1175, 1179-1183, 1186 (affirming modification of a protective order following settlement to unseal documents attached to dispositive and non-dispositive motions upon motion of intervenor newspapers); *Jepson, In. v. Makita Electrical Works, Ltd*, 30 F.3d 854, 860 (7th Cir. 1994) (holding that there was no "good cause" for a protective order to prevent party from releasing pretrial deposition of nonparty to the United States International Trade Commission); *Pansy*, 23 F.3d at 777, 791 (permitting intervention by newspapers and remanding to the district court to determine if "good cause" existed to maintain protective order preventing release of settlement agreement); *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) (modifying protective order to allow access to discovery materials by intervening collateral litigants).

[4] *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 727 F.3d 1214, 1226-1228 (Fed. Cir. 2013) (applying precedent from within the Ninth Circuit Court of Appeals as the law of the regional circuit to permit a small subset of documents to remain permanently sealed following trial); *Foltz v. State Farm Mutual Insurance Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (overturning blanket protective order and requiring defendant to make a showing of "good cause" for each document for which it sought continuing protection); *Citizens First National Bank of Princeton v. Cincinnati Insurance, Co.*, 178 F.3d 943, 944-945 (7th Cir. 1999) (reversing the protective order issued by the district court because "[t]he order is so loose that it amounts…to giving each party carte blanche to decide what portions of the record shall be kept secret. Such an order is invalid."); *Glenmeade Trust Co. v. Thompson*, 56 F.3d 476, 479, 484 & n.13 (3d Cir. 1995) (holding that petitioners failed to demonstrate "good cause" for umbrella protective order).

Appellee, Reproduced Record (R.R.) at 39a.) Publishing such a defamatory piece, relying solely on the unverified assertions of one individual, would certainly allow a reasonable trier of fact to draw an inference of malice. (Appellee's Deposition, R.R. at 66a.) The inference of a hostile intent is buttressed by the amount of time that Appellee allowed her false statements to live on as links posted on her social media pages and within her employer's online archives. (*Id.* R.R. at 69a-70a.) Moreover, the existence of animus finds further support in the litigious history between Appellant and Appellee's employer at the time of publishing, as well as between Appellant and Appellee's counsel.[5] This showing by Appellant—Appellee's false statements, Appellee's continued publication of her false statements on social media, and the history of the parties directly and indirectly involved in this action—coupled with Appellee's counsel's refusal to agree that she would not use the visual record of Appellant's deposition for purposes other than this litigation,[6] lead this jurist to conclude that Appellant produced

---

[5] *See Dougherty v. Philadelphia Newspapers, LLC*, (Phila. CCP, July Term 2009, No. 004224); *Dougherty v. Philadelphia Newspapers, LLC*, (Phila. CCP, June Term 2009, No. 00325); *Dougherty v. Philadelphia Newspapers, LLC,* (Phila. CCP, March Term 2009, No. 004790); *see also Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082 (Pa. Super. 2014) (holding that the Pennsylvania Rules of Professional Conduct barred Pepper Hamilton, LLP (Pepper), from representing Philadelphia Newspapers, LLC, and related defendants in a defamation action filed by Appellant due to a conflict of interest, which Appellant did not waive, stemming from Pepper's prior representation of Appellant).

[6] Appellant and Appellant's counsel appeared on March 16, 2012 for his noticed deposition. Prior to the start of questioning, while Appellant's and Appellee's counsel were making stipulations for the record, the following exchange took place:

> [Appellant's counsel]: Since this is being videotaped, we have some concerns since it involves the media that perhaps this could go beyond use for court filings or court proceedings. We're perfectly fine [proceeding with the videotaped deposition] with the understanding that it's going to be used just for that purpose, but we are not comfortable if it goes to a third party, any portions of this videotape. And we'd like assurances that that will not be the case.

....
I'm not trying to handcuff your use. We[ ] just want[ ] to make sure that we're not going to be watching the news and all of a sudden a clip of today's deposition appears and [is used] for purposes outside of this litigation. And that's all we want assurances, that that's not going to be the case.

[Appellee's counsel]: That's not the intent, yes.

[Appellant's counsel]: Well I want assurances that that's not going to be the case.

[Appellee's counsel]: I am not going to give you an assurance that that's not going to be the case. That's not the intent. I plan on using this in connection with the litigation. I have never not used a transcript and a video deposition not in connection with litigation.
...
[Appellant's co-counsel]: Well, no, no [counsel], we want to make, so it's very clear, we want [an] agreement that this will be used by you just for litigation. You're not going to turn it over to like the news media, television for anything like that. That's all we want.

[Appellee's counsel]: … I never had an intent of doing that, and I'm not planning on doing it....

[Appellant's co-counsel]: We want [an] agreement that you won't do it.

[Appellee's counsel]: Well, I don't think that I'm obligated not to and I don't want to be put to agreeing to that—

[Appellant's co-counsel]: You're obligated if we're having this televised that you're not using it for other purposes in the litigation and you're not going to turn it over to television stations or the media in general just to broadcast it. You are obligated to do that.

[Appellee's counsel]: I am obligated by whatever my obligations are under the rules.

[Appellant's counsel]: See, this is a problem for us, [counsel], because ... we need to assess that any more damage than already has been done, from our vantage point, is not going

7

to occur. Now, we recognize you have a right to do a videotaped deposition, and we're not disputing that.

[Appellant's co-counsel]: For purposes of litigation.

[Appellant's counsel]: That's exactly right. And we need to know that assurance because then we have to assess whether perhaps there's a need to have a [Trial Court] step in and decide that the videotape option that you otherwise would be entitled to is not going to occur without that assurance. You certainly would help us put that issue aside if you will right now represent to us that besides this litigation, the videotape will not be used for any other purpose or released to any other third parties outside of relationship with any filing in this case or court proceeding. I think it's a simple request. And as [counsel] said, it's really the professional responsibility and duty you owe.
....
[Appellee's counsel]: ... I don't have the authority. All I have the authority to say to you is I abide by the rules, and I will abide by the rules. And if the ethical rules put constraints on what lawyers can do with materials in discovery, I abide by those rules.

[Appellant's co-counsel]: Well, [counsel], we're not going to go ahead with... videotaping [this deposition] if you are not in a position to tell us that you will not turn it over to the media to have it broadcast[ed].
...
[Appellee's counsel]: I'm not saying that I am going to give it to some TV station to just broadcast. But I don't know who might ask it of me, I don't know—I certainly am not calling up anybody and asking them to take this videotape. But I am not in the position to assure you that under all circumstances I would not provide the videotape to someone else if it seemed appropriate.
...
[Appellant's counsel]: [ ] I think it's significant to [Appellant], given his history, that we have a very, very solid agreement as to how we're going to handle this tape. Because, you know, you are the media and we're here because of what we contend to be malicious conduct by the media of a public figure. And we think that without giving us this assurance, it raises a great deal of doubt of what the intentions are here.
....

8

sufficient evidence to establish a substantial risk that his pre-trial video tape deposition would be used for non-litigation purposes, and that a protective order was warranted.

Appellant's request for a protective order focused on the form in which and the purposes for which information disclosed in pre-trial discovery may be disseminated. Appellant's request was made in the embryonic stage of litigation, prior to rulings on admissibility, prior to filings of post-discovery dispositive motions, and prior to trial. Had Appellant sought broader relief or sought protection to prevent disclosure of information during trial, Appellant would have needed to satisfy a more stringent evidentiary burden; however, on this record, at the pre-trial stage of the litigation process, the Trial Court abused its discretion in determining that Appellant had not established "good cause" and denying a protective order preventing dissemination of the visual record of Appellant's deposition for non-litigation purposes.

Senior Judge Friedman joins this concurring and dissenting opinion.

---

> [Appellant's counsel]: [A]ll we want[ ] [are] assurances that if somebody on the outside requested the tape or if you were inclined to think of releasing it that we would get advance notice so we could then have a [trial c]ourt decide whether that's appropriate or not. The fact that we can't have that basic agreement again raises strong flags in our mind. We are not going to go forward with the videotaping. You can choose to go forward with just having the transcript. Otherwise, we're going to seek the protective relief and we'll let the [Trial Court] decide how we're going to proceed with the videotaped portion of this.

(Appellant's Deposition, R.R. at 89a-96a.)

9